# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**HELEN BHASKER,**                 **No. 17-cv-00260-JB-WPL**

**On behalf of herself and all others similarly**

**situated,**

       **Plaintiff,**

**VS.**

**FINANCIAL INDEMNITY COMPANY,**

       **Defendant.**

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND <u>MEMORANDUM OF LAW IN SUPPORT</u>

COMES NOW the Plaintiff, Helen Bhasker, on behalf of herself and all others similarly situated, and herby submits her Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint and Memorandum of Law in Support. In support of this Response and Memorandum of Law in Opposition, Plaintiff states as follows:

### INTRODUCTION

The Plaintiff, Helen Bhasker, procured automobile insurance through a policy issued by the Defendant, Financial Indemnity Company. In her First Amended Complaint, the Plaintiff asserts that the Defendant deceptively solicited and sold underinsured motorist ("UIM") coverage in amounts equal to the statutory minimum limits of liability coverage without properly

advising her that such UIM coverage under New Mexico law was basically illusory. *See* Plaintiff's First Amended Complaint [Doc. 12], ¶¶ 1, 43, 46, 48. On June 24, 2015, the Plaintiff was involved in an automobile accident in which the at-fault driver, Stephanie Martinez, was underinsured. *Id.*, ¶¶ 11, 13, 17. Plaintiff's damages eclipsed all coverages at issue. Plaintiff did receive the full amount of the tortfeasor's liability coverage, namely $25,000.00, but has not recovered any contractual benefit of UIM coverage for which she paid. *Id.*, ¶¶ 18, 44.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review.

In considering a Rule 12(b)(6) motion, the district court must construe all well-pleaded factual allegations in the light most favorable to the non-movant and ask only if they state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Ute Indian Tribe of the Uintah v. Myton*, 835 F.3d 1255, 1261 (10th Cir. 2016); *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271 (D.N.M. 2015). "[W]hen considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor." *Saenz*, 105 F. Supp. 3d at 1288. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

As the courts have recognized, when ruling on a Rule 12(b)(6) motion, consideration of potential evidence that would be presented at trial is improper. Rather,

> [t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.

*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim." *Morey v. Miano*, 141 F. Supp.

2d 1061, 1062–63 (D.N.M. 2001). "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Id.* A court *may not* dismiss a cause of action under Fed.R.Civ.P. 12(b)(6) unless the plaintiff can prove no set of facts supporting the complaint's claim that would entitle him/her to relief. *Id.* at p. 1062 (emphasis added).

## II.    The "Filed Rate Doctrine" is inapplicable to the claims raised by Plaintiff's Complaint.

Defendant raises the "Filed Rate Doctrine" as an affirmative defense to its liability under the First Amended Complaint. *Pub. Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACORP Inc.*, 379 F.3d 641 (9th Cir. 2004) (filed rate doctrine is affirmative defense); *Horwitz ex rel. Gilbert v. Bankers Life & Cas. Co.*, 319 Ill. App. 3d 390, 745 N.E.2d 591 (2001) (filed rate doctrine if affirmative defense).

The insurer has improperly asserted the affirmative defense of the filed rate doctrine to a claim of illusory coverage. Plaintiff does not deny that she alleges a premium was paid for illusory coverage, but the gravamen of Plaintiff's First Amended Complaint involves disputed contractual coverage, misrepresentations to sell coverage, and a failure to properly advise the Plaintiff as to the impact of her choice. *See* First Amended Complaint [Doc. 12], ¶¶ 2, 27, 29, 33, 46, 47, 48, 74, 83.  Such conduct is separate from any regulatory framework or the setting of rates. *Peachtree Cas. Ins. Co. v. Sharpton*, 768 So. 2d 368, 372 (Ala. 2000), opinion after certified question answered, No. CIV. A. 97-D-771-N, 2001 WL 286919 (M.D. Ala. Mar. 20, 2001) (filed-rated doctrine inapplicable to claim of unenforceable exclusion in UIM).

> Underlying the filed rate doctrine is the principle that any 'filed rate' – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers. The filed rate doctrine serves two interests: (1) the prevention of price discrimination among rate payers, and (2) the preservation of

the exclusive role of regulatory agencies to determine the reasonableness of rates, in light of courts' limited ability to do so.

*Keeling v. Esurance Ins. Co.*, No. 10-0835-DRH, 2012 WL 699580, at *4 (S.D. Ill. Mar. 1, 2012) (internal quotations and citations omitted).

The court in *Keeling* ruled that the filed rate doctrine was wholly inapplicable to a claim of illusory UIM coverage and recognized that the purpose of the doctrine was not applicable to the claims raised by the claimant. *Id.* at *4-5.

> Plaintiff's claims are based upon state law and do not challenge defendant's rates. Rather, plaintiff's complaint contains claims of deception and fraud and seeks damages and equitable relief on the basis that the insurance coverage was a sham. Thus, plaintiff's claims challenge defendant's alleged deception, not the amount charged for the underinsured coverage and do not seek to change the rates.

*Id.* at *5. *See also*, *Sewell v. Safeco Ins. Co. of Am.*, No. 06-CV-000150-EWN-MJW, 2007 WL 2071617, at *3 (D. Colo. July 19, 2007) (Where plaintiff challenged the coverage she received rather than the amount of the rate charged, assertion of the filed rate doctrine is "disingenuous.").

The same analysis is applicable to the instant dispute. The First Amended Complaint alleges that, based on fraudulent and deceptive behavior by the insurer, the coverage provided was a sham. New Mexico law precludes an insurer from retaining premiums on an insurance contract where the policy is illegal. *Forrest Currell Lumber Co. v. Thomas*, 1970-NMSC-018, ¶¶ 15-16, 81 N.M. 161, 165, 464 P.2d 891, 895 (1970). Further, New Mexico law provides that approval of a policy form by a regulatory body does not conclusively establish the validity of the policy or shield it from review by the courts. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 69, 133 N.M. 669, 689, 68 P.3d 909, 929 (Ct. App. 2003).

Applying the filed rate doctrine to every insurance dispute in which an insured alleges that the contract was illusory is clearly contrary to New Mexico law and cannot stand. Here, the Plaintiff's claim for relief is based on the alleged fraudulent representations of the insurer, which

eliminates the application of the filed rate doctrine. For these reasons, the insurer's attempt to rely on the filed rate doctrine must be rejected and the First Amended Complaint be permitted to stand.

### III. The Voluntary Payment Doctrine is inapplicable to the instant claim and does not act as an affirmative defense to the Defendant's liability.

In another unorthodox attempt to eliminate the Plaintiff's right to pursue her claim, Defendant alleges that the "voluntary payment doctrine" precludes the instant claim. Yet the first authority cited by the insurer offers clear and controlling support for the Plaintiff's position. The court in *Rabbit Ear Cattle Co. v. Frieze*, 1969-NMSC-043, ¶ 5, 80 N.M. 203, 204, 453 P.2d 373, 374 (1969), identified the exception to the rule's application which is pertinent to the instant dispute: "payments voluntarily made with full knowledge of all material facts cannot be recovered back *in absence of fraud or duress*." (emphasis added).

The affirmative defense of voluntary payment is not a legally adequate affirmative defense to claims of unfair and deceptive business practices. In considering an analogous statutory consumer claim, the court in *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721 (Mo. 2009), specifically considered whether the voluntary payment doctrine was an applicable affirmative defense to a violation of the Merchandising Practices Act, an unfair and deceptive trade practices violation. The complaint before the court alleged that the defendant illegally charged many customers for a separate paper channel guide that the customers had not requested. *Id.* at 723. The complaint specifically alleged that the defendant's conduct amounted to an unlawful trade practice. *Id.* The defendant raised the voluntary payment doctrine as an affirmative defense to the statutory claim. *Id.* at 723-24. The court found that the defense was inapplicable. *Id.* at 727.

This conduct, if proven, is an unfair practice that is prohibited by the act. 15 CSR 60–8.060(1); section 407.020.1. To allow Charter to avoid liability for this unfair practice through the voluntary payment doctrine would nullify the protections of the act and be contrary to the intent of the legislature.

*Id*.; *see also Samuel v. Time Warner, Inc.*, 10 Misc. 3d 537, 549, 809 N.Y.S.2d 408, 418 (Sup. Ct. 2005) (claims of unfair and deceptive trade practices predicated on the absence of full disclosure at the time of installation, as required under state statute, was not a situation where payments were made as a matter of convenience with full disclosure, thereby precluding application of voluntary payment as an affirmative defense); *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12 (Iowa 2013) (voluntary payment doctrine found not applicable as an affirmative defense to preclude reimbursement in actions alleging violations of consumer protection statutes.); *Deere Constr., LLC v. Cemex Constr. Materials Florida, LLC*, 198 F. Supp. 3d 1332, 1342 (S.D. Fla. 2016) (where state law applied voluntary payment doctrine when one party had knowledge of the facts, affirmative defense could not be resolved on motion to dismiss); *Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1104 (D. Haw. 2014) (in *dicta*, "[a]lthough the Court need not decide whether the Voluntary Payment Rule is inapplicable against consumer protection statutes, the Court notes that several jurisdictions find that the Voluntary Payment Rule does not apply to statutes like H.R.S § 480–2."[1]).

The court in *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 170 P.3d 10 (2007), considered this affirmative defense as applied to a consumer protection act claim, based on the assessment of a surcharge to local customers. The defendant raised the voluntary payment doctrine as an affirmative defense in a motion for summary judgment. *Id.* at 69, 170 P.3d at 15. In discussing the application of the voluntary payment doctrine to the claim, the court properly noted the generally recognized exception, to

---

[1] H.R.S. § 480-2 declares "unfair and deceptive acts or practices in the conduct of any trade or commerce" unlawful.

wit; the doctrine is inapplicable where the payment was induced by fraud. *Id.* at 85, 170 P.3d at

23. The court further noted that state law had previously applied the doctrine only in the context

of contract actions. *Id.* at 86, 170 P.3d at 23. The court then rejected the application of the

affirmative defense to the matter before it. *Id.* at 86, 170 P.3d at 24.

> We agree with Indoor Billboard that the voluntary payment doctrine is inappropriate as
> an affirmative defense in the CPA context, as a matter of law, because we construe the
> CPA liberally in favor of plaintiffs.

*Id.* at 24.

Indeed, in other contexts, courts have uniformly recognized that a payment made under

duress, or as a result of fraudulent behavior, is not voluntary and the doctrine is inapplicable.

*Shaw v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 141, 151 (D.D.C. 2007). "A plaintiff may defeat the

doctrine by showing that the payment was 'not truly voluntary.'" *Id.* This exception includes

payments made under circumstances amounting to duress or business necessity. *Id.*

In denying a summary judgment motion that was raised on the voluntary payment

doctrine, the United States District Court stated:

> [h]owever, the voluntary payment doctrine does not apply when a plaintiff's claim is
> predicated on a lack of full disclosure by defendant. *See Spagnola v. Chubb Corp.*, 574
> F.3d 64, 73 (2d Cir.2009); *see also Samuel v. Time Warner, Inc.*, 10 Misc.3d 537, 809
> N.Y.S.2d 408, 418 (Sup.Ct.N.Y.2005) (the voluntary payment doctrine did not apply to
> claims 'predicated on the absence of full disclosure at the time of installation'). Issues of
> disclosure, notice, and authorization are very much contested in the instant action. In
> addition to the misrepresentation allegations discussed above, Plaintiffs proffer that
> Defendant's policy was to misrepresent to customers the reasons for slow service.

*Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 649 (S.D.N.Y. 2011), on reconsideration, No.

08 CIV. 9628 LTS KNF, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011).

Here, Defendant has failed to cite any New Mexico authority recognizing this common

law affirmative defense, and with good reason. In one of the only reported New Mexico

decisions involving a voluntary payment, the court in *Aetna Life Ins. Co. v. Nix*, 1973-NMSC-

069, 85 N.M. 415, 512 P.2d 1251 (1973), recognized that a voluntary payment of benefits by the insurer under a mistake of fact would not preclude the insurer from recouping payments made in a restitution action. The court stated that representations, fraudulently or innocently made, that induced the insurer to pay benefits under the policy could not preclude the insurer from recovering those payments. *Id.* at, ¶ 9, 85 N.M. at 417, 512 P.2d at 1253. The court in *Cheesecake Factory, Inc. v. Baines*, 1998-NMCA-120, ¶ 6, 125 N.M. 622, 624–25, 964 P.2d 183, 185–86 (Ct. App. 1998), referenced the doctrine only in *dicta*, and then only in the context of a claim for restitution.

The New Mexico courts have simply not recognized or applied the voluntary payment doctrine outside the context of restitution claims and clearly never in the context of a bar to a statutory cause of action. It is apparent then, that whether based on an improper extension of state law, or the well-recognized exceptions to the common law doctrine, the voluntary payment doctrine is equally inapplicable to the instant action and must fail.

**IV.     Plaintiff set forth a viable cause of action for the sale of illusory coverage by the Defendant.**

The main argument put forth by Defendant is that the underlying claim of the sale of illusory coverage cannot be maintained as a matter of law.

Under New Mexico law, coverage for Underinsured Motorist Insurance ("UIM") is available with limits equal to the limits of liability coverage. N.M.S.A. § 66-5-301(A) (Westlaw 2017). The coverage may be rejected in writing. N.M.S.A. § 66-5-301(C) (Westlaw 2017). What is clear from the facts alleged in Plaintiff's First Amended Complaint is that the Plaintiff believed that she was purchasing valuable coverage. *See* First Amended Complaint [Doc. 12], ¶¶ 20, 25-26, 29-32, 35, 39, 43, 45-46, 48, 73. In fact, what she was led to purchase was worthless and illusory since the insurer would never incur liability under the policy. *Pompa v. Am. Family*

*Mut. Ins. Co.,* 520 F.3d 1139, 1145 (10th Cir. 2008) (The second type consists of exclusions that render coverage illusory, "in effect allow[ing] the insurer to receive premiums when realistically it is not incurring any risk of liability.").

The New Mexico Supreme Court has opined on the nature and value of UIM coverage under the state statute.

> If the tortfeasor carried the statutory minimum of liability insurance and the injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000. The injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous. *See State ex rel. ENMU Regents v. Baca*, 2008–NMSC–047, ¶ 10, 144 N.M. 530, 189 P.3d 663 (per curiam) ('[W]e refrain from reading statutes in a way that renders provisions superfluous.'). **An insured carries UIM coverage *only* if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000.**

*Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 160-61, 245 P.3d 1209, 1212-13 (2010) (emphasis added).

This issue of whether the UIM coverage sold to the Plaintiff is, in fact, illusory has not been squarely addressed by the New Mexico courts and thus an examination of out-of-state authority in those jurisdictions with a similar statutory framework to that in New Mexico is warranted.  In other jurisdictions where the limits of the tortfeasor's liability coverage and the claimants' underinsured motorist coverage limits are the same, and where the state law determines a claimant's status as underinsured solely by considering the contractual limits of liability rather than the damages sustained, courts have recognized that under the principle of illusory coverage, or under the reasonable expectations of the claimant, UIM coverage may be activated.

As the Court is aware, different jurisdictions define and apply UIM coverage differently. Some jurisdictions compare the damages sustained by the insured to the limits of coverage under

the tortfeasor's policy. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809 (Tex. 2006). Other jurisdictions require a comparison of the limits of the tortfeasor's policy to the limits of the insured's UIM policy to satisfy the definition of an underinsured motorist. *S'Dao v. National Grange Mut. Ins. Co.*, 87 N.Y.2d 853, 638 N.Y.S.2d 597, 661 N.E.2d 1378 (1995). Thus, those jurisdictions that have considered the issue which is most pertinent to Plaintiff's dispute are those where the definition of underinsured motorist requires an examination of the limits of coverage, as is required under the policy at issue in this case.

This scenario was addressed by the Illinois court in *Glazewski v. Allstate Ins. Co.*, 126 Ill. App. 3d 401, 407, 466 N.E.2d 1151, 1156 (1984), aff'd in part, rev'd in part sub nom. *Glazewski v. Coronet Ins. Co.*, 108 Ill. 2d 243, 483 N.E.2d 1263 (1985). There, the insured was involved in a collision with a tortfeasor who carried the statutory minimum limits of liability coverage. *Id.* at 404-05, 466 N.E.2d at 1153-54. The insured had purchased UIM coverage equal to the statutory minimum limits of liability coverage. *Id.* As in the instant dispute, the insured brought suit against the insurer for failing to disclose that the UIM coverage with the minimum limits of coverage would provide no additional coverage for collisions in the state with tortfeasors who complied with the financial responsibility laws. *Id.* at 405, 466 N.E.2d at 1154.

> The statute requiring insurers to offer underinsured motorist coverage allows insurance companies to restrict recovery to the difference between the amount recoverable under the policy of the at-fault driver and the maximum limit of the insured's underinsured motorist coverage so long as the insured's underinsured limit exceeded the limit of the at-fault driver's liability coverage. If the limits of liability are the same, the insured could never recover from his insurance company on his underinsured policy nor could an insured recover if the limits of liability in the at-fault driver's policy exceed the limits of the insured's underinsured coverage.

*Id.* at 407, 466 N.E.2d at 1156 (internal citation omitted). The court further stated,

> [t]hus, underinsured coverage in the minimum limits of 15/30 is indeed illusory because it would never be payable when recovery is sought from another Illinois

motorist. Furthermore, it would not be payable in instances where the at-fault
driver is insured in other states which have financial responsibility limits equal to
or greater than those required in Illinois.

*Id.* at 407-08, 466 N.E.2d at 1156.

This is precisely the situation in which the Plaintiff finds herself.  She was involved in an

accident with a tortfeasor who obtained the statutorily minimum limits of liability coverage. *See*

Plaintiff's First Amended Complaint [Doc. 12], ¶ 18. When she purchased her own underinsured

coverage, she was never informed by Defendant that purchasing coverage in the minimum limits

would result in a situation where coverage would never be available. *See Id.*, ¶¶ 19, 20, 25, 26,

29, 32, 35, 39, 43, 45, 48. Thus, she purchased what she thought was a contractual benefit that

would never be available. *See Id.*, ¶¶ 45, 48.

Similarly, in *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 267, 500 N.W.2d 354, 355 (Ct.

App. 1993), *superseded by statute,* the insured was involved in a collision with a tortfeasor who

carried the statutory minimum limits of $25,000 in coverage, although the insured's injuries

exceeded that amount.  The insured was insured under a policy that included $25,000 in

underinsured benefits.  *Id.* at 267-68, 500 N.W.2d at 355. The policy defined underinsured

benefits as providing coverage only if the tortfeasor's policy limits are less than the underinsured

benefits listed under the policy. *Id.* at 269, 500 N.W.2d at 355-56. The court set out the dilemma

facing the insured in trying to recover.

American States' definition of 'underinsured motor vehicle' precludes coverage,
in this case, if the tortfeasor's policy limits are $25,000 or less. However, in
Wisconsin, liability coverage cannot be issued for less than $25,000 under sec.
344.33, Stats. Because Wisconsin drivers must have a liability policy of at least
$25,000, Hoglund will never recover under American States' $25,000 UIM policy
if the tortfeasor is an insured Wisconsin driver. If the driver is uninsured, Hoglund
would recover under the uninsured motorist provisions, not the UIM provisions.

*Id.* at 270, 500 N.W.2d at 356. Because the insured had paid a premium for a benefit that would never be available, the court found the coverage illusory and contrary to public policy. *Id.* at 271, 500 N.W.2d at 357.

In *Smith v. Auto-Owners Ins. Co.*, 500 So. 2d 1042, 1044 (Ala. 1986), both the tortfeasor's liability policy and the insured's UIM policy provided for the same dollar amount of coverage. The UIM policy limited the extent of the insurer's liability for paying UIM benefits as follows:

> the amount by which the limits stated in the Declarations for Underinsured Motorist Coverage exceed the total limits of ... insurance policies applicable to the person or persons responsible for the damages, and (2) such damages as are in excess of the total limits of all such insurance policies.

*Id.* at 1043. The decedent's estate was initially denied recovery under the UIM policy. *Id.* The court, applying the reasonable expectation doctrine, allowed a recovery of contractual benefits. *Id.* at 1045.

> When the deceased purchased underinsured motorist coverage, he had reason to expect that, under certain circumstances resulting in his injury or death through the fault of an underinsured motorist, he or his legal representative could recover damages from his own insurer according to the limits and conditions of the contract between them. He also had the legal right to expect that these terms and conditions would not conclusively preclude such recovery under any and all circumstances. To denominate as 'insurance' a contract that purports to provide a coverage and then conditions that coverage on a non-existent risk of loss is a contradiction of terms. Thus, under these circumstances, public policy considerations mandate that the Auto-Owners policy provide underinsured motorist coverage with minimum limits of $10,000.

*Id.* at 1044–45.

Another example of illusory coverage in a UIM policy was discussed by the Montana court in *Hardy v. Progressive Specialty Ins. Co.*, 315 Mont. 107, 67 P.3d 892 (2003). There, the named insured bought a policy insuring three vehicles and including UIM benefits with limits in the amount of $50,000 per person. *Id.* at 110, 67 P.3d at 894. The insured was involved in a

collision with a tortfeasor and recovered his $50,000 in liability coverage. *Id.* The policy defined

an uninsured vehicle as one where "the sum of all applicable limits of liability for bodily injury

is less than the coverage limit for Underinsured Motorist Coverage shown on the Declarations

Page." *Id.*, 67 P.3d at 894-95 (original emphasis omitted). Furthermore, the policy contained an

offset provision which provided that the UIM coverage shown on the declarations page would be

offset by the amount the insured recovers from the tortfeasor. *Id.*, 67 P.3 at 895. The court

recognized that "[i]n all cases where the tortfeasor's liability coverage is equal to or more than

Hardy's UIM coverage limit, Hardy can recover nothing from the UIM coverage." *Id.* at 113, 67

P.3d at 896. The court was persuaded by the analysis in *Transamerica Ins. Group v. Osborn*,

627 F. Supp. 1405 (1986 D.Mont.), finding a similar UIM definition illusory and applied the

reasonable expectation doctrine to the claim before it. *Id.* at 114, 67 P.3d at 896-97.

> However, the principle that the insurance consumer's reasonable expectation is
> that UIM insurance provides additional coverage when the insured's damages
> exceed what is available from the tortfeasor, which is expressed in those cases, is
> applicable to the facts in this case.

*Id.* The policy as written was illusory since there were no circumstances under which the

coverage purchased by the insured would ever be realized. *Id.* at 114-15, 67 P.3d at 897.

In *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 333, 400 S.E.2d 575, 577 (1990), the

plaintiff was involved in a motor vehicle crash and the at-fault driver had automobile liability

insurance with limits of $100,000 per person; the plaintiff had underinsured motorist coverage

with limits of $100,000 per person. The plaintiff alleged the tortfeasor caused her damages in

excess of $200,000, collected the tortfeasor's liability limits of $100,000, and sought to recover

the $100,000 limits of her underinsured motorist coverage. *Id.* West Virginia's underinsured

motorist statute requires a comparison of the limits of the tortfeasor's liability policy to the limits

of the insured's UIM policy in order to determine whether a motorist should be classified as

underinsured. *Id.*, *see also* W.Va. Code Ann. § 33-6-31(b).[2] In considering whether the plaintiff could collect the benefits of her UIM coverage when the policy limits of the tortfeasor's liability insurance and the plaintiff's UIM insurance coverage were equal, the court agreed with other courts which had considered the issue and stated:

> We agree… that a literal application of the definition of 'underinsured motor vehicle,' requiring the amount of the tortfeasor's *liability* insurance to be *less than* the *underinsured* motorist coverage limits, would result in *essentially* worthless, or, as some courts refer to it, 'illusory,' underinsured motorist coverage when the injured person has underinsured motorist coverage in an amount equal to (or less than) the amount of the tortfeasor's liability insurance actually available to the injured person in question.

*Id.* at 335, 400 S.E.2d at 579 nt. 5 (emphasis original). The court went on to note that

> [t]he most common scenario for finding 'illusory' underinsured motorist coverage is when the injured person has the statutory minimum amount of underinsured motorist coverage and the tortfeasor, from the same state, has the statutory minimum amount of motor vehicle liability insurance coverage, and those two amounts are equal.

*Id.* Using the rules of statutory construction, and considering the "preeminent public policy of the underinsured motorist statute, which is to provide full compensation… to an injured person for his or her damages not compensated by a negligent tortfeasor," the court held that UIM coverage was activated under West Virginia's underinsured statute. *Id.* at 338, 400 S.E.2d at 582.[3]

Where an insured's underinsured coverage was equal to a tortfeasor's liability coverage, Indiana courts have also held that such coverage was illusory under a policy that defined an

---

[2] W.Va.Code Ann. § 33-6-31)b) states as follows: "'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage."

[3] Importantly, New Mexico's underinsured statute also furthers a public policy of compensating injured persons not compensated by a negligent tortfeasor. *See Richards v. Mountain States Mut. Cas. Co.*, 104 N.M. 47, 49, 716 P.2d 238, 240 (1986) ("The object of Section 66–5–301(A) is to *compensate* those persons injured through no fault of their own.") (emphasis added); *see also Salas v. Mountain States Mut. Cas. Co.*,145 N.M. 542, 549, 202 P.3d 901, 808 (2009) (New Mexico's UIM statute "was intended to *expand* insurance coverage and to protect individual members of the public against the hazards of culpable uninsured motorists.") (emphasis added).

underinsured motorist as one whose limits of liability coverage were less than the limits of UIM coverage.

> Where an otherwise unambiguous insurance clause provides only illusory coverage when construed within the insurance contract in its entirety, the courts of this state will enforce the provision so as to give effect to the reasonable expectation of the insured.

*Landis v. Am. Interinsurance Exch.*, 542 N.E.2d 1351, 1354 (Ind. Ct. App. 1989); *see also W. Reserve Mut. Cas. Co. v. Holland*, 666 N.E.2d 966, 968 (Ind. Ct. App. 1996) (UIM policy coverage was illusory where "[the insured]'s policy provided that Holland could recover if (1) the tortfeasor had coverage; (2) the coverage was less than $25,000.00; and (3) the coverage was not less than $25,000.00. The only reasonable interpretation of the policy is that it provides no underinsurance benefits to Holland.").

Defendant's assertions that the underinsured contract is not illusory in New Mexico because of the remote possibility that an out-of-state driver could be insured under a liability policy having lower limits than those mandated by New Mexico is unreasonable as a matter of law. First, as noted above, New Mexico's Supreme Court has explicitly stated that "[a]n insured carries UIM coverage **only** if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000." *Weed Warrior Services*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 161, 245 P.3d at 1213 (2010) (emphasis added). Thus, New Mexico courts have already decided that a New Mexico insured with only $25,000 in UM/UIM coverage *does not*, in fact, carry underinsured coverage. Given this clear existing law, it is no wonder Defendant attempts to negate its application in this case by noting that the New Mexico Supreme Court in *Weed Warrior* was considering a different UM/UIM issue when it found underinsured coverage to be "superfluous" when an injured driver purchases the statutory minimum of UM/UIM coverage; the context in which the New Mexico Supreme Court found UIM coverage to be nonexistent

when an insured carries $25,000 in UM/UIM coverage does not negate the court's holding.

Moreover, even if a tortfeasor has an out-of-state liability policy with lower bodily injury

liability minimum limits than those required in New Mexico, there is always the possibility that

the tortfeasor's policy will contain an out-of-state coverage clause which will provide liability

limits in an amount equal to the liability limits imposed by New Mexico's Mandatory Financial

Responsibility Act. *See, for example, Bristol West Ins. Co. v. Wawanesa Mut. Ins. Co.*, 570 F.3d

461, 463-64 (1st Cir. 2009).[4] The effect of such a clause would be to increase the out-of-state

tortfeasor's liability limits to the minimum amount required in New Mexico, namely, $25,000. In

such an instance, a New Mexico resident with minimum UIM limits *would not* be able to recover

the benefits of his or her UIM coverage in an auto accident with an out-of-state driver.

    Second, Defendant's hypothetical and remote examples of instances when an insured

with minimum UIM limits *might* recover some benefits from his or her UIM coverage does not

negate the illusory nature of the coverage. In *Hardy v. Progressive Specialty Ins. Co.,* the

plaintiff had UIM coverage of $50,000 and the at-fault tortfeasor had $50,000 in liability

coverage. 315 Mont. at 109, 67 P.3d at 894. The plaintiff argued that the state's UIM definition

created illusory coverage when an insured purchased UIM coverage and, in response, the insurer

argued that UIM coverage was not illusory because there were limited circumstances under

---

[4] Driver, a resident of Maine, had $50,000 bodily injury liability limits policy as required by Maine's compulsory insurance law for bodily injury. 570 F.3d at 463. Driver was at fault for a car crash which occurred in New Brunswick, Canada; New Brunswick had a financial responsibility law with $200,000 limits. *Id.* at 464. The driver's insurance policy had an "Out of State Coverage" clause which stated as follows:

    If an auto accident to which this policy applies occurs in any state or province other than the one in which 'your covered auto' is principally garaged, we will interpret your policy for that accident as follows:

        A. If the state or province has:

            1. A financial responsibility or similar law specifying limits of liability for 'bodily injury' or 'property damage' higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

The court found that the "out-of-state coverage" clause increased the driver's coverage amount for the crash to $200,000. *Id.*

which an insured could recover some benefits of his or her UIM coverage. *Id.* at 113-14, 67 P.3d at 896-97. Specifically, the insurer argued that UIM coverage may exist "when the tortfeasor is insured in a state that has lower mandatory liability limits than Montana, or if there are multiple people in [an insured's] vehicle attempting to recover from a tortfeasor with insufficient coverage." *Id.* at 115, 67 P.3d at 897. The court rejected the insurer's argument, stating that

> these remote examples are not the typical occurrence; will not in most cases provide [the plaintiff] with the amount of UIM coverage that he thought he purchased; and are not sufficient to overcome the fact that in nearly all conceivable situations, [the insurer's] promise to pay up to $50,000 of UIM coverage will not be honored.

*Id.* While Defendant argues that that there are circumstances when it may pay UIM benefits when an insured has minimum limits of UIM coverage,[5] these are hypothetical situations, the facts of which are not before this Court. *See Hoglund*, 176 Wis.2d at 270, 500 N.W.2d at 356 (where the court refused to consider hypothetical facts in reaching its decision when the hypothetical facts were not before the court). As the facts of *this* case show, the Plaintiff purchased UIM coverage for the minimum limit of $25,000, was involved in an auto accident with another vehicle which carried the minimum liability limits of $25,000, and therefore Plaintiff paid a premium for a benefit which, under the circumstances of her auto accident, she could never realize. *See* Plaintiff's First Amended Complaint [Doc. 12], ¶¶ 18, 19, 32, 43, 48. Accordingly, Defendant's reference to remote examples and hypothetical facts, none of which are at play in this case, should not control the Court's analysis in this instance. In this case, the insured had a reasonable expectation that she was purchasing meaningful and valuable coverage

---

[5] Defendant argues that benefits under a minimum limits UIM policy may be paid when (1) a tortfeasor has an out-of-state liability policy with lower bodily injury liability minimum limits than those required in New Mexico; (2) there are multiple injured parties in an accident such that no single policyholder will recover the entirety of the tortfeasor's liability limit; and (3) if the insured receives less than the tortfeasor's policy limits due to a contractual exclusion for punitive damages.

within this state, and was never informed that the coverage for which she paid could only be triggered by such limited circumstances. *See* Plaintiff's First Amended Complaint [Doc. 12], ¶¶ 19, 20, 32, 43, 45, 48.

Although Defendant attempts to discredit Plaintiff's reasonable expectations argument in the context of its analysis of the voluntary payments doctrine, an insured's reasonable expectations are of paramount importance when considering what benefits an insured is entitled to under the terms of an insurance policy. The "reasonable expectations" doctrine, as applied to insurance coverage, is well-established under New Mexico law. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 22, 123 N.M. 752, 759, 945 P.2d 970, 977( 1997) ("The court's construction of an insurance policy will be guided by the reasonable expectations of the insured."); *Sanchez v. Herrera,* 1989-NMSC-073, ¶ 24, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989) ("The reasonable expectations of the insured [] provide the criteria for examining an insurance contract on the basis both of the actual words used and of unresolved issues that the insurance company has an obligation to address.").

Defendant argues that the reasonable expectations doctrine does not come into play in the face of clear and unambiguous policy language and contends that the doctrine does not apply in this case as the policy at issue clearly states when Plaintiff's UIM coverage applied. First, this assertion simply is not true as New Mexico courts have found that "[t]he doctrine of reasonable expectations is not restricted to those cases in which the policy language is at issue." *Barth v. Coleman*, 1994-NMSC-067, ¶ 15, 118 N.M. 1, 5, 878 P.2d 319, 323 (1994); *see also Berlangieri v. Running Elk Corp.,* 2002-NMCA-096, ¶ 13, 132 N.M. at 96, 44 P.3d at 542 (Ct. App. 2002) ("[t]he doctrine [of reasonable expectations] is also available when the 'dynamics of the insurance transaction' make way for its application."). As recognized by the court in *Berlangieri*,

"[t]he doctrine of reasonable expectations may be invoked when the language of an insurance policy _**or** representations of the insurance company lead an insured to reasonably expect coverage_." *Berlangieri*, 2002-NMCA-096, ¶ 13, 132 N.M. at 95, 44 P.3d at 541 (emphasis added); *see also Barth,* 1994-NMSC-067, ¶ 15, 118 N.M. at 5, 878 P.2d at 323 (citing favorably *INA Life Ins. Co. v. Brundin*, 533 P.2d 236, 242 (Alaska 1975) for its position that "[a] lay person's expectations of insurance coverage are of course formed by many factors besides the language of the policies themselves.").

> Often, the dynamics of the insurance transaction, and not the language of the contract itself, determine what the reasonable expectations of the insured are. Accordingly, courts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer.

*Barth*, 1994-NMSC-067, ¶ 15, 118 N.M. at 5, 878 P.2d at 323 (internal citations and quotations omitted). Plaintiff has clearly alleged facts which, if taken as true, demonstrate that Defendant made representations to Plaintiff which led her to reasonably expect she could recover up to $25,000 from Defendant under her UIM coverage in the event she was involved in an auto accident with a tortfeasor who had bodily injury liability limits of $25,000/$50,000. *See* Plaintiff's First Amended Complaint [Doc. 12], ¶¶ 19, 20, 25, 26-32, 42, 43, 45, 46, 48, 50.

Second, the policy language at issue is not clear and unambiguous. In applying the doctrine of reasonable expectations, the courts will look to how a reasonable non-attorney would view the terms of coverage.

> The understanding we impute to a hypothetical reasonable insured must be an understanding that a non-lawyer insured could derive from the language employed in [a] policy without resorting to extrinsic sources such as cases from other jurisdictions or law review articles.

*Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, ¶ 13, 132 N.M. 264, 268, 46 P.3d 1264, 1268 (Ct. App. 2002); *see also Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 13, 139 N.M. 24, 27, 127 P.3d 1111, 1114 (2006) ("We acknowledge that an

insured's purposes in purchasing insurance are important considerations. Our interpretation of language within an insurance policy, however, is not based on a subjective view of coverage, but rather 'our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured who, we assume, will have limited knowledge of insurance law.'"). In applying the doctrine of reasonable expectations, courts also "refer to what the hypothetical reasonable insured would glean from the wording of the policy *and the kind of insurance at issue*." *Hinkle v. State Farm Fire & Cas. Co.*, 2013-NMCA-084, ¶ 18, 308 P.3d 1009, 1014 (Ct. App. 2013) (emphasis added). In this case, Plaintiff purchased UIM coverage which she believed, based on her non-lawyer and limited understanding of insurance law, would provide benefits to her in the event she was involved in an auto accident with a driver whose limits of liability were insufficient to compensate her. *See* Plaintiff's First Amended Complaint [Doc. 12], ¶¶ 19, 20, 39, 43, 45, 48. Plaintiff has pled facts which show that she, and other reasonable insureds, have a reasonable expectation they will receive underinsured benefits which they paid a premium for in the event of a collision with an underinsured motorist.

Having bought and paid for a valuable coverage, and being unable to recover that benefit under the facts alleged in the First Amended Complaint, the coverage at issue is illusory under the laws of New Mexico, and Defendant's Motion to Dismiss must fail.

### CONCLUSION

As demonstrated herein, Plaintiff has pled facts which, if taken as true and viewed in the light most favorable to the Plaintiff, suffice to evidence her entitlement to relief for her claims against Defendant for negligence, violation of the New Mexico Unfair Trade Practices Act, violation of the New Mexico Unfair Insurance Practices Act, breach of contract, breach of the covenant of good faith and fair dealing, and for punitive damages. Both of Defendant's

affirmative defenses must fail as a matter of law and Plaintiff has shown that the underinsured

coverage she purchased must be considered illusory. Accordingly, Defendant's Motion to

Dismiss must be denied in its entirety and the matter permitted to proceed.

Respectfully submitted,

WILL FERGUSON AND ASSOCIATES

*/s/ William S. Ferguson*
William S. Ferguson
1720 Louisiana Suite 100
Albuquerque, NM 87106
Phone: (505) 243-5566
Fax: (505) 245-5699
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on May 23, 2017, I filed the foregoing electronically through

the CM/ECF system, which caused the following parties or counsel to be served by

electronic means, as more fully reflected on the Notice of Electronic Filing:

Alicia Santos          asantos@obrienlawoffice.com

*/s/ William S. Ferguson*
William S. Ferguson