IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HELEN BHASKER,
on behalf of herself and all others
similarly situated,

        Plaintiff,

v.                                            CIV 17-260 JB/JHR

FINANCIAL INDEMNITY COMPANY,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion to Compel Defendant to Respond to Written Discovery Requesting Claims Files and Communications and her Memorandum in Support. *Doc. 62*. Having reviewed Defendant's Response (*Doc. 64*) and Plaintiff's Reply (*Doc. 68*), the Court will grant the Motion in part and deny it in part, as further described herein.

### I)      BACKGROUND

Plaintiff, Helen Bhasker, was rear-ended by a third party while traveling eastbound on I-40 on June 24, 2015, and sustained bodily injuries and other damages as a result of the collision. *See Doc. 12* (First Amended Complaint) at ¶¶ 11-12. Thereafter, Plaintiff received the full extent of liability coverage carried by the tortfeasor ($25,000.00), and turned to her own insurance carrier, Defendant Financial Indemnity Company, to recover underinsured motorist benefits. *Id.* at ¶¶ 17-19. The parties agree that Plaintiff's damages exceed $50,000.00. *See Doc. 28* at 3. However, Plaintiff's insurance policy with Defendant only contained minimal underinsured motorist coverage of $25,000.00 per person and $50,000.00 per accident; therefore, Defendant

1

denied her claim, reasoning that New Mexico is a "difference state." *Doc. 64-4* at 1. Plaintiff claims that the underinsured motorist coverage she purchased from Defendant was, accordingly, illusory[1] under New Mexico law. *Doc. 12* at ¶¶ 23 (citing *Progressive Nw. Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 10), 32.

Plaintiff filed her Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties in New Mexico state court on December 30, 2016. *See Doc. 1-1*. Defendant removed the case to this Court on February 24, 2017, citing the Class Action Fairness Act and diversity of the parties. *See Doc. 1* (citing 28 U.S.C. §§ 1332, 1441 and 1453). Pertinent here, Defendant conceded that "from December 30, 2010 to December 30, 2016, there were approximately 795 claims in New Mexico where the insured had minimum UIM limits of $25,000 and Defendant did not pay UIM coverage." *Id.* at 9.

Plaintiff filed her First Amended Complaint on March 23, 2017. *Doc. 12* (hereafter "Complaint"). In her Complaint, Plaintiff alleges that Defendant "failed to act honestly and in good faith when it solicited and sold superfluous and illusory minimal limits underinsured motorist coverage to their insureds (in whole or in part) in violation of New Mexico law, and/or they denied claims for the benefits of that coverage." *Id.* at ¶ 1. Plaintiff brings the following claims on her own behalf and on behalf of the putative class: negligence (Count I); violation of New Mexico's Unfair Trade Practices Act (Count II); violation of New Mexico's Unfair Insurance Practices Act (Count III); breach of contract (Count IV); breach of the covenant of good faith and fair dealing (Count V); and claims for declaratory and injunctive relief (Counts VI-VII). Plaintiff defines the putative class as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of the filing of this complaint, were a policy holder and/or insured, of a Motor Vehicle Policy issued by defendant

---

[1] *See* Black's Law Dictionary (10th ed. 2014) (defining "illusory" as "[d]eceptive; based on a false impression.").

where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by the defendant, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference state".

*Id.* at ¶ 54.

This matter is now before the Court on Plaintiff's Motion to compel certain discovery from Defendant. Specifically, Plaintiff's Motion targets Requests for Production numbers 1-2 and 8. *See Doc. 62* at 2-6. Plaintiff also moves the Court for production of the redacted portions of her claim file that have been withheld by Defendant. *Id.* at 8-12.

## II) LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) ("Under our rules, parties to civil litigation are given broad discovery privileges."). That said, the Court "is not 'required to permit [a] plaintiff to engage in a fishing expedition in the hope of supporting his claim.'" *Kennicott v. Sandia Corp.*, CIV 17-0188 JB/GJF, 2018 WL 2206880, at *2 (D.N.M. May 14, 2018) (quoting *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018)). Ultimately, "[c]ounsel bears the responsibility of propounding proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair." *Punt v. Kelly Services*, 862 F.3d 1040, 1047 (10th Cir. 2017).

Parties may issue requests for production pursuant to Federal Rule of Civil Procedure 34 "within the scope of Rule 26(b)[.]" Fed. R. Civ. P. 34(a). Each request must be stated with "reasonable particularity," *Regan-Touhy*, 526 F.3d at 649 (quoting Fed. R. Civ. P. 34(b)(1)(A)), and be responded to or addressed by specific objection. Fed. R. Civ. P. 34(b)(2). "Though what qualifies as 'reasonably particular' surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and to enable the court to ascertain whether the requested documents have been produced.'" *Regan-Touhy*, 526 F.3d at 649–50 (quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). A party may move to compel a response to a request for production if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv).

"At this stage of the case, the issue is whether the proposed discovery is relevant to class certification." *Soseeah v. Sentry Ins.*, 2013 WL 11327129, at *3 (D.N.M. Nov. 4, 2013) (citation omitted). "The discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts presented an undue burden to the defendant. Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification." *Id.* "Notably, discovery on class certification is not a matter of ascertaining whether Plaintiffs will prevail on the merits, but whether the moving party can establish that the discovery is pertinent to the class certification requirements of Fed. R. Civ. P. 23." *Id.* at *5.

"[T]he party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met." *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) (quoted authority omitted). "Once a district court concludes the requirements of Rule 23(a) are satisfied, the court may certify a class if it finds the movant has also satisfied the conditions of either Rule 23(b)(1), (2), or (3)." *Id.* Thus, all classes must satisfy the prerequisites under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "A party seeking to certify a class is required to show 'under a strict burden of proof, that all the requirements of Fed. R. Civ. P. 23(a) are clearly met.'" *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (quoted authority omitted). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

Defendant stipulates to numerosity in this case. *Doc. 64* at 4. As such, only commonality, typicality and adequate representation will be at issue before Judge Browning. These elements "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982). To prove commonality, Plaintiff will have to show that members of the putative class "possess the same interest and suffer[ed] the same injury." *Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006) (quoting *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). "A single common question will suffice to satisfy rule 23(a)(2), but the question must be one 'that is central to the validity of each one of the claims.'" *Anderson Living Tr. v. WPX Energy Prod.,*

*LLC*, 306 F.R.D. 312, 380 (D.N.M. 2015), *adhered to on reconsideration, Anderson Living Tr. v. WPX Energy Prod., LLC*, 312 F.R.D. 620 (D.N.M. 2015) (quoting *Dukes*, 564 U.S. at 350). To prove typicality, a plaintiff must show that the named representative's claims are typical of the class' claims. *Id.* at 382. Finally, "similar to commonality and typicality, the class representative and class members 'must share common objectives and legal or factual positions,' although they need not be identical." *Casados v. Safeco Ins. Co. of Am.*, CIV 10-0751 JAP/SMV, 2015 WL 11089527, at *5 (D.N.M. Nov. 6, 2015) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015)).

### III) ANALYSIS

### A) Claims files of putative class members.

In Request No. 1, Plaintiff requests "the complete Claim Files for the 795 individuals Defendant identified and referenced in its Notice of Removal." *Doc. 62-1* at 1. Defendant objected that this request is

> overbroad, unduly burdensome and seeks information which is irrelevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence. No class has been certified in this matter, and, in any event, Defendant is stipulating to numerosity. The information sought regarding putative class members is irrelevant to Plaintiff's individual claims and fatally overbroad….
>
> Moreover, given that the only possibly relevant claim at this point is Plaintiff's individual claim, requiring Defendant to expend the time and resources to obtain the information sought for all putative class members would be unduly burdensome. Notwithstanding these objections, and without waiver thereof, Defendant has already produced a copy of the non-privileged portions of Plaintiff's individual claim file, which is all that New Mexico Courts would require at this point….

*Id.* at 1-3 (citations omitted). The Court overrules Defendant's objections.

First, Defendant has failed to show how Plaintiff's request is overly broad. When it removed the case to this Court Defendant admitted that "from December 30, 2010 to December

30, 2016, there were approximately 795 claims in New Mexico where the insured had minimum UIM limits of $25,000 and Defendant did not pay UIM coverage." *Doc. 1* at 9. Plaintiff's request simply seeks the files for the 795 claims Defendant admits were treated similarly to Plaintiff's. Because Defendant was able to readily identify the files that were relevant to Plaintiff's request, Defendant's overbreadth objection is without merit. *See Whatcott v. City of Provo*, 171 Fed. Appx. 733, 736 (10th Cir. 2006) (unpublished) ("Because plaintiff does not maintain that he is unable to readily identify the documents requested or that it would be unduly difficult to determine which documents fall within the scope of the request plaintiff's objections based on overbreadth are without merit.") (quoted authority omitted).

Next, Defendant has failed to demonstrate that responding to Plaintiff's request would be "unduly burdensome." As noted above, under Rule 26(b)(1) the Court must consider, among other things, the amount in controversy, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Defendants, by virtue of invoking the Class Action Fairness Act, have admitted that the amount in controversy in this case exceeds five million dollars. *See Doc. 1* at 4-16. Additionally, production of the putative class' claims files will certainly resolve the issue of whether class certification is warranted in this case. Thus, the question is whether the burden of the proposed discovery outweighs this benefit. The Court finds that it does not.

Defendant admits that it has access to the 795 claims at issue via "an enterprise database system called 'Guidewire Claims Center,' which is often referred to as just 'Claims Center.'" *Doc. 64-2* at 2. Defendant further admits that within each claim file there is a section entitled "Claim Notes," which can be retrieved and printed. *Id.* The "Claim Notes" portion of the file contains a "diary or log of entries by those employees and adjusters who act on the file." *Id.*

Defendant complains, however, that "to accomplish this process of printing and saving the Claim Notes would take several days of full-time work. (This does not include any time for reviewing and redacting Personal Health Information or privileged information.)" Defendant also admits that there is a section of the file entitled "Documents," which "contains an electronic copy of the external materials associated with the file. For example, there could be vehicle damage repair estimates, *correspondence with claimants* and third parties, medical bills and myriad other materials." *Id.* (emphasis added). However, Defendant asserts that "[s]electing and printing all the materials in the Document section for every claim file would be very burdensome, as a single claim file could have dozens or hundreds of individual documents in that section." *Id.*

In sum, Defendant points to several days of full-time work that would be required to retrieve the "Claim Notes" portion of the 795 files at issue, and does not specify how burdensome it would be to retrieve the "Documents" portion. Nonetheless, this amount of resources does not seem unduly burdensome under the rules considering the amount in controversy. Defendant further argues that production of the claims files would require additional redaction of personal health information and privilege review. *Doc. 64* at 8. However, the Court does not see how such document processing differs from Defendant's duty during the ordinary course of litigation. Moreover, the entry of an agreed confidentiality order would assuage many of Defendant's concerns. *See Brown v. Montoya*, 2013 WL 1010390, at *21 (D.N.M. Mar. 8, 2013) ("[T]he files here could contain sensitive information; therefore, the Court will permit the Defendants to redact the names and addresses of the individuals if they wish. If that redaction process is too burdensome, the Court will order them produced under a confidentiality order stating for attorney's eyes only.").

Finally, Defendant's objection that the 795 claims files are irrelevant to Plaintiff's claims because no class has yet been certified is rejected. Requiring Plaintiff to prove commonality and typicality without access to the files wherein Defendant admits that "the insured had minimum UIM limits of $25,000 and Defendant did not pay UIM coverage," *Doc. 1* at 9, is unfair as a matter of principle. Defendant essentially admits that it treated 795 other claimants in the same manner as Plaintiff, yet refuses to produce the files for those individuals because they are allegedly irrelevant until a class has been certified. This is backwards reasoning. Moreover, Defendant points to no binding authority requiring a Plaintiff to prove the requirements of Rule 23 without access to the files of similarly situated individuals. To the contrary, the cases Defendant relies on permitted the requested discovery, albeit with limitations. *See Doc. 64* at 10 (citing *Brown v. Montoya*, 2013 WL 1010390, at *20 (D.N.M. Mar. 8, 2013); *Seabron v. Am. Family Mut. Ins. Co.*, 862 F. Supp. 2d 1149, 1153 (D. Colo. 2012), *order clarified on reconsideration* (June 26, 2012)).

For example, in *Brown*, Judge Browning permitted access to "*some* files at this early stage of the case," reasoning that production of 20 files would suffice to flesh out the claims at issue there. 2013 WL 1010390, at *20 (emphasis added). Likewise, in *Seabron*, the District of Colorado permitted discovery related to a putative class but found that "given the time burden placed upon Defendants and the stage of the litigation, a sample size of ten percent would adequately provide Plaintiffs with a sufficient sample to address the issues outlined herein concerning class certification[.]" 862 F. Supp. 2d at 1155. Thus, the court in *Seabron* ordered a total of 160 claims files to be produced. *Id.*

In sum, Defendant's objections are rejected. Defendant made the choice of litigating this case in this court, and cannot escape its obligation under the Federal Rules to produce

information that is relevant to Plaintiff's claims and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).

Anticipating this result, Defendant alternatively argues that "if the Court is inclined to require Defendant to respond at all to Plaintiff's Request Nos. 1 and 2, is should limit the production to just a sample of the claim files." *Doc. 64* at 11. "However, a party should not be limited by its opponent's theory of the case in determining what is discoverable." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009). Moreover, the cases that have permitted such a sampling do not convince the Court that such a measure would be appropriate here. For example, in *Seabron* the District of Colorado noted "that there is scant authority regarding the appropriate size of any sample of the claim and legal files in the class action discovery context." 862 F. Supp. 2d at 1154. Rather, the authority the court relied on in that case (itself persuasive) ordered a sample of less than one percent of the class "without any specific findings or analysis." *Id.* (discussing *Transamerican Refining Corp, v. Davo Corp.*, 139 F.R.D. 619, 621 (S.D.Tex.1991)). The *Seabron* Court similarly determined that ten percent of the putative class' files should be produced without explaining how it reached that figure. *Id.* at 1155. Likewise, Judge Browning's rationale in *Brown* for ordering only 20 files produced was not supported by particular precedent, but, rather, seems driven by the fact that there might be nothing relevant in the files produced. *See* 2013 WL 1010390, at *21 ("If there is not anything relevant in the twenty files, then there will not be anything relevant in a hundred."). This is not the case here. To the contrary, Defendant all but admits that the 795 files Plaintiff seeks contain relevant information.

Therefore, Defendant's objections are overruled, and Defendant is ordered to respond to Plaintiff's first request for production. However, the Court will limit the production in the

following way. Defendant does not have to produce the claims files in their entirety, but must produce the "Claims Notes" portion of the files, as well as any rejection letter or similar correspondence to the insured claimant contained in the "Documents" portion. Defendant does not, however, have to produce *all* of the documents contained in that section. Should Plaintiff need additional portions of the claims files in order to prove commonality and typicality, she may renew her Motion at a later time. *See Brown*, 2013 WL 1010390, at *22 ("If these twenty files contains the information identifying individuals similarly situated to the Plaintiffs, as the Plaintiffs are seeking, then the Plaintiffs can renew their motion, if appropriate, at a later time to compel the Defendants to produce more or all of the records that they are seeking.").

**B) Claims files of potential class members.**

The parties' arguments as to Request Nos. 1 and 2 tend to blend. However, the Court views the requests as very different. In Request No. 2, Plaintiff requests the "Claim Files for individuals that purchased underinsurance motorist coverage from Defendant within six years prior to the filing of this lawsuit and submitted a claim for underinsured motorist coverage." *Id.* at 3. In response, Defendant referred Plaintiff to its response to Request No. 1, and further objected that this request "is even further overbroad and irrelevant than Request No. 1 because it is not limited to claim files of potential class members." *Id.* at 4. The Court agrees with Defendant that this request is overly broad and exceeds the scope of Rule 26(b)(1). Unlike the 795 claims files that Defendant has already identified, Plaintiff's second request for production seeks claims files for *any* individual who purchased underinsurance coverage and submitted a claim for underinsured motorist coverage. These individuals, however, are not demonstrably within the class that Plaintiff seeks to represent. As stated above, Plaintiff defines the putative class as:

> All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of the filing of this complaint, were a policy holder and/or insured, of a Motor Vehicle Policy issued by defendant where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by the defendant, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference state".

*Id.* at ¶ 54. Thus, the putative class is clearly limited to insureds that purchased minimum limits coverage. As such, the Court sustains Defendant's relevancy and overbreadth objections as to this request.

### C) Communications regarding underinsured motorist coverage.

In Request No. 8, Plaintiff asks Defendant to "produce any and all communications . . . between Defendant and its New Mexico agents, brokers, and agencies regarding underinsured motorist coverage." *Id.* at 6. Defendant objected to this request

> on the grounds that it is overbroad, unduly burdensome, and seeks information which is irrelevant to the subject matter of the pending action and not reasonably calculated to the discovery of admissible evidence. There is no reasonable means of collecting all such communications (if any exist). Moreover, this request is not limited in time or scope, and could apply to any aspects of underinsured motorist coverage, including those which have no bearing on this lawsuit.

*Id.* Defendant's objections will be sustained in part.

First, the Court finds that the requested communications are within the scope of Plaintiff's claims and are relevant. *See, e.g.*, *Soseeah v. Sentry Ins.*, CIV 12-1091 RB/ACT, 2013 WL 11327129, at *10-12 (D.N.M. Nov. 4, 2013) (ordering the insurer to produce any non-privileged instructional documents used to address the handling of UM/UIM claims following the decisions in *Jordan* and *Weed Warrior*.); *Willis v. Geico Gen. Ins. Co.*, CIV 13-0280 KG/KK, 2016 WL 1749665, at *8 (D.N.M. Mar. 29, 2016) ("Defendant GEICO will be required to produce any non-privileged documents memorializing, describing, or explaining any changes to Defendant GEICO's protocols that were made in response to the *Weed Warrior* and/or *Jordan*

decisions."). Plaintiff's claims in this case mirror those in *Soseeah* and *Willis*, where such discovery was permitted. *Soseeah* was a putative class action involving allegations that an insurer denied the benefits of UM/UIM coverage to its New Mexico insureds. *See* 2013 WL 11327129 at *1. In ruling on a motion to compel, Magistrate Judge Torgerson held that "how Defendants handled UM/UIM claims is relevant to the issue for certification; *i.e.*, whether the Defendants failed to provide appropriate levels of coverage to insureds with UM/UIM coverage that had been declared invalid by [the] *Jordan* and *Weed Warrior* decisions." *Id.* at *12. Likewise, in *Willis*, Magistrate Judge Khalsa ordered an insurer to disclose "protocols and necessary changes in protocols after the *Weed Warrior* and *Jordan* decisions" in a case involving extracontractual claims for violations of New Mexico's Unfair Practices Act and Unfair Insurance Practices Act as well as tort claims for insurance bad faith. 2016 WL 1749665, at *8.

Here, Plaintiff brings putative class-wide claims all premised upon Defendant's alleged failure to provide underinsured motorist insurance coverage that complied with New Mexico law. *See Doc. 12* at 13-19. In fact, Plaintiff's Complaint explicitly references the *Weed Warrior* decision in asserting that the coverage she purchased was illusory. *See Doc. 12* at ¶ 23. As such, the Court cannot agree with Defendant that Plaintiff's request is overly broad and irrelevant.

However, Defendant also argues that responding to the request would be unduly burdensome because it has "no reasonable means of capturing the information Plaintiff seeks." *Doc. 15* at 24. Moreover, Defendant has asserted that such communications do not exist. Rule "34 does not require a party to create responsive documents if they do not exist in the first instance." *Honecutt v. Farmers Insurance Company of Arizona*, 2008 WL 11333932, at *4 (D.N.M. 2008). As such, to the extent that Defendant argues that such communications do not exist, *see Doc. 64* at 11, Plaintiff must accept Defendant's verified answer so stating.

However, the Court pauses to note the risk Defendant is taking. Defendant argues that, in an attempt to resolve this discovery dispute, "Defendant acceded to Plaintiff's demand to produce a list of *all its independent agents in New Mexico* so that Plaintiff could engage in third-party discovery regarding potential agent communications with Defendant. Yet, after Defendant went to this effort, Plaintiff engaged in absolutely no third-party discovery of those agents." *Doc. 64* at 15 (emphasis in original). Should Plaintiff choose to engage in third-party discovery and discover communications Defendant has asserted simply do not exist, Defendant may be subject to sanctions under the pertinent rules. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv); Fed. R. Civ. P. 37(a)(4).

### D) Plaintiff's Unredacted Claim File

Finally, Plaintiff moves the Court to compel the production of the redacted portions of her claim file. *See Doc. 62* at 6. Rather than producing Plaintiff's entire claim file, Defendant produced a redacted version and the privilege log attached to Plaintiff's Motion to Compel, wherein it explains that it is withholding information on the grounds of the work product and attorney-client privileges. *See Doc. 62* at 6-11; *Doc. 62-3* (privilege log); *Doc. 64* at 17.

 In federal court,

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must
> > (i)     Expressly make the claim; and
> > (ii)    Describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Ordinarily, "[a]nalysis into whether a communication falls within the attorney-client privilege precedes the inquiry into whether the work-product doctrine applies." *Harjo v. City of Albuquerque*, CIV 16-1113 JB/JHR, 2018 WL 1686074, at *3 (D.N.M.

Apr. 4, 2018) (citing *S.E.C. v. Goldstone*, 301 F.R.D. 593, 651 (D.N.M. 2014)). However, in insurance cases like this one, arguments in support of these privileges tend to merge. *See Barela v. Safeco Ins. Co. of Am.*, CIV 13-1084 SMV/SCY, 2014 WL 11497826 (D.N.M. Aug. 22, 2014). As such, the Court addresses both, with distinctions drawn as appropriate.

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51 (1980). The privilege protects "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983) (internal quotation omitted). Thus, "[i]n order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (internal citations omitted); *see also, In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) ("Although this description of the attorney-client privilege suggests the privilege only applies one way, operating to protect the client's communications to a lawyer, it is generally also recognized that the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client.") (internal quotation omitted). In addition, the mere fact that an attorney was involved in a communication does not render the communication privileged. *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995)).

The burden of proving that the attorney-client privilege applies to a particular communication rests on the party asserting the privilege. *In re Grand Jury Proceedings*, 616

F.3d at 1183; *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records*, 697 F.2d 277, 279 (10th Cir. 1983); *Rivera v. Fast Eddies, Inc.*, CIV 11-0827 WJ/LFG, 2012 WL 12910618, at *3 (D.N.M. Aug. 29, 2012). The party asserting the privilege must prove the privilege exists as to specific questions or documents, rather than making a blanket assertion. *In re Grand Jury Proceedings*, 616 F.3d at 1183. The privilege must be strictly constructed and "accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (internal quotations and citations omitted); *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 399 (D. Colo. 1992) ("The privilege is to be strictly construed. It is to be extended no more broadly than necessary to effectuate its purpose.") (internal citations omitted).

In a diversity action, such as this, the substantive law of New Mexico on attorney-client privilege applies. Fed. R. Evid. 501. New Mexico's Rules of Evidence expressly provide for and govern the attorney-client privilege in New Mexico. *See* Rule 11-503(C) NMRA. "Under New Mexico law, the attorney-client privilege applies to 'confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.'" *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (citing *Bd. of Comm'rs of Dona Ana County v. Las Cruces Sun News*, 2003-NMCA-102, ¶ 25; Rule 11–503(B) NMRA).

In contrast, even "[i]n diversity cases, Rule 26(b)(3) of the Federal Rules of Civil Procedure governs work-product issues." *Anaya*, 251 F.R.D. at 650 (citing *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998)). Rule 26(b)(3) provides that

> [o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be

discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.... If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A), (B). "In order to establish work product protection for a document, a discovery opponent must show that the primary motivating purpose behind the creation of a document must be to aid in possible future litigation." *President & Fellows of Harvard Coll. v. Elmore*, CIV 15-0472 RB/KK, 2016 WL 7508832, at *2 (D.N.M. Apr. 13, 2016).

Here, Defendant asserts that the attorney-client privilege applies to certain claims file entries "reflecting communications with and legal advice from counsel regarding Plaintiff's claim." *Doc. 64* at 18, 19 ("Defendant has simply redacted specific claim note entries and an e-mail which reflect communications between Defendant and its counsel regarding Plaintiff's claim."). The Court disagrees.

As Plaintiff points out in her reply, *see Doc. 68* at 10, "courts have routinely applied a rebuttable presumption 'that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made' as to that claim." *Barela v. Safeco Ins. Co. of Am.*, CIV 13-1084 SMV/SCY, 2014 WL 11497826, at *4 (D.N.M. Aug. 22, 2014) (citation omitted). That said, "'[t]he courts have adopted a nuanced approach to the anticipation-of-litigation prong of work-product analysis' and focus on 'whether specific materials were prepared in the ordinary course of business, or were principally prompted by the prospect of litigation.'" *Id.* (citing 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (3d ed.)). And, "[t]he converse, of course, is presumed for documents produced after claims denial." *Id.* (citation omitted).

> To overcome these presumptions, the insurer must demonstrate, by specific evidence proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision.

*Id.* For example, in *Barela*, Magistrate Judge Yarbrough ordered the production of an insured's entire unredacted claims file in a bad faith action, even information contained in it that was prepared after the insured filed suit, because, there, "although Plaintiff initiated litigation on August 15, 2013, her underlying uninsured/underinsured motorist claim has yet to be resolved. Furthermore, [the] Plaintiff allege[d] that Defendant's bad faith has continued since the filing of her lawsuit." *Id.* at *5.

Here, most of Defendant's entries on its privilege log occurred prior to the initiation of Plaintiff's suit, in December 2016, with one exception. *See Doc. 62-3* at 1-2. Moreover, Defendant has not demonstrated that the withheld entries were reasonably associated with anticipated litigation, versus to arrive at (or buttress) a decision on Plaintiff's claim. Therefore, the Court finds that the attorney-client privilege does not apply to these claims entries, which, as far as the Court can tell, were "prepared in the ordinary and routine course of the insurer's business of claim determination." *Barela*, 2014 WL 11497826, at *4. Of course, Defendant argues that it had reason to anticipate litigation in this case early on; specifically, it points to statements by Plaintiff's counsel suggesting that he would be forced to take "necessary legal action" on July 29, 2016. *See Docs. 64* at 20; *64-4*. However, the Court sees little merit in this position, as posturing by attorneys is incumbent to the practice of insurance adjusting. More importantly, Defendant has failed to meet its burden to demonstrate that the withheld documents were used solely to prepare for litigation.

Finally, it is Defendant's burden under the rules to "[d]escribe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Here, Defendant's privilege log states, extremely generally, "claim note entry reflecting legal advice," "claim note entry requesting legal advice," etc. *See Doc. 62-3*. As such, the Court finds that even if the attorney-client or work product doctrines applied, Defendant has waived them by failing to produce an adequate privilege log. *See Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007) ("The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege.").

### E) Sanctions

Finally, the Court must consider whether to award fees and costs. *See Doc. 62* at 11 (requesting fees and costs reasonable incurred in filing Plaintiff's motion to compel). "The rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) (quoting 1970 committee notes to Rule 37(a)(4)). As a consequence, Federal Rule of Civil Procedure 37 contains provisions that "allow, and often require" the Court to award attorney fees for discovery misconduct. *Id.* at 678.

Under the Rules,

[i]f the motion [to compel] is granted … the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response or

> objection was substantially justified; or (iii) other circumstances make an award
> of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied, the Court may, similarly, assess costs and

fees against the movant. Fed. R. Civ. P. 37(a)(5)(B). If the motion is granted in part and denied

in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable

expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

Here, the Court finds that the parties' disputes were genuine. Moreover, the Court is

granting neither party the full relief it requested. As such, no fees and costs will be awarded for

the litigation of the instant Motion.

## IV)     CONCLUSION

Defendant sought shelter in federal court under the Class Action Fairness Act, ostensibly

to secure a more neutral litigation forum. However, with a federal forum comes federal rules of

procedure and discovery practice. Here, those rules favor the broad discovery that Plaintiff is

seeking in order to establish that her claims are common to, and typical of, the class of persons

she seeks to represent.

Wherefore, for the forgoing reasons, Plaintiff's Motion to Compel (*Doc. 62*) is hereby

granted in part. Within 30 days of the entry of this Order Defendant must produce:

a) The "Claim Notes" portion of the 795 claims files it admits are relevant to Plaintiff's

claims in this action, as well as any correspondence rejecting or denying such claims

due to New Mexico's offset law or being a "difference state" contained in the

"Documents" portion of those files;

b) Any and all communications between Defendant and its New Mexico agents, brokers,

and agencies regarding underinsured motorist coverage, to the extent those

communications exist;

c) Plaintiff's entire, unredacted, claims file.

In all other respects Plaintiff's Motion to Compel (*Doc. 62*) is denied.

SO ORDERED.

_____
Jerry H. Ritter
United States Magistrate Judge