IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HELEN BHASKER,
on behalf of herself and all others
similarly situated,

       Plaintiff,

v.                                                                         CIV 17-260 JB/JHR

FINANCIAL INDEMNITY COMPANY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Protective Order. [Doc. 65]. Having reviewed Plaintiff's Response [Doc. 70] and Defendant's Reply [Doc. 72], the Court will grant the Motion in part and deny it in part, as further described herein.

**I)    BACKGROUND**

Plaintiff, Helen Bhasker, was rear-ended by a third party while traveling eastbound on I-40 on June 24, 2015, and sustained bodily injuries and other damages as a result of the collision. [*See* Doc. 12 (First Amended Complaint), ¶¶ 11-12]. Plaintiff received the full extent of liability coverage carried by the tortfeasor ($25,000.00), and turned to her own insurance carrier, Defendant Financial Indemnity Company, to recover underinsured motorist benefits. *Id.* at ¶¶ 17-19. The parties agree that Plaintiff's damages exceed $50,000.00. [*See* Doc. 28, p. 3]. However, Plaintiff's insurance policy with Defendant only contained minimal underinsured motorist coverage of $25,000.00 per person and $50,000.00 per accident; therefore, Defendant denied her claim, reasoning that New Mexico is a "difference state." [Doc. 64-4, p. 1]. Having received no value from the coverage she purchased from Defendant, Plaintiff claims that the underinsured

1

motorist coverage she purchased from Defendant was, accordingly, illusory[1] under New Mexico law. [Doc. 12, ¶¶ 23 (citing *Progressive Nw. Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 10), 32].

Plaintiff filed her Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties in New Mexico state court on December 30, 2016. [*See* Doc. 1-1]. Defendant removed the case to this Court on February 24, 2017, citing the Class Action Fairness Act and diversity of the parties. [*See* Doc. 1 (citing 28 U.S.C. §§ 1332, 1441 and 1453)]. Plaintiff filed her First Amended Complaint on March 23, 2017. [Doc. 12 (hereafter "Complaint")]. In her Complaint, Plaintiff alleges that Defendant "failed to act honestly and in good faith when it solicited and sold superfluous and illusory minimal limits underinsured motorist coverage to their insureds (in whole or in part) in violation of New Mexico law, and/or denied claims for the benefits of that coverage." [*Id.*, ¶ 1]. Plaintiff brings the following claims on her own behalf and on behalf of the putative class: negligence (Count I); violation of New Mexico's Unfair Trade Practices Act (Count II); violation of New Mexico's Unfair Insurance Practices Act (Count III); breach of contract (Count IV); breach of the covenant of good faith and fair dealing (Count V); and claims for declaratory and injunctive relief (Counts VI-VII). Plaintiff defines the putative class as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of the filing of this complaint, were a policy holder and/or insured, of a Motor Vehicle Policy issued by defendant where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by the defendant, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference state".

[*Id.*, ¶ 54].

---

[1] *See* Black's Law Dictionary (10th ed. 2014) (defining "illusory" as "[d]eceptive; based on a false impression.").

The current dispute involves Defendant's Rule 30(b)(6) deponents: specifically, Plaintiff's nineteen proposed deposition topics for the witnesses. While Defendant indicates in its Motion and Reply that it will provide witnesses to discuss most of Plaintiff's topics, it asks the Court to limit those topics on a number of grounds and preclude questioning in certain areas. [*See generally* Doc. 65]. Plaintiff opposes a protective order and asks that Defendant be compelled to provide testimony as initially requested. [Doc. 70].

## II) LEGAL STANDARDS

Protective orders are governed by Federal Rule of Civil Procedure 26(c), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). The burden of showing good cause falls at all times on the party seeking protection. "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F. 3d 476, 483 (3d Cir. 1995). If good cause is demonstrated, the Court is able to take a variety of actions in issuing a protective order, including:

> (A) forbidding the disclosure or discovery;
> (B) specifying the terms, including time and place or the allocation of expenses, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

*Id.* at 26(c)(1)(A)-(D). If a protective order is denied, the Court may order the discovery that was sought to be precluded. Fed. R. Civ. P. 26(c)(2).

Rule 30(b)(6) governs depositions of organizations, providing that "a party name as the deponent … [any] entity and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 36(b)(6). "The named organization must then designate … [witnesses]; and it may set out the matters on which each person designated will testify." *Id.* "The persons designated must testify about information known or reasonably available to the organization." *Id.* Thus, "[u]nder Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject." *In Re: Santa Fe Natural Tobacco Company Marketing & Sales Practices and Products Liability Litigation*, CIV 16-2695 JB/LF, 2018 WL 3972909, at *5 (D.N.M. Aug. 18, 2018) (cited authority omitted).

Rule 26(b)(1) governs the scope of discovery, "[u]nless otherwise limited by court order," providing that

> [p]arties may obtain discovery regarding any nonprivileged matters that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, information sought in discovery must be "of consequence" to a party's claim or defense, and have a tendency to make a fact more or less probable that it would be without the evidence.

## III) ANALYSIS

Plaintiff presented nineteen deposition topics for Defendant's Rule 30(b)(6) witness(es). Defendant objected to eighteen of those topics. Defendant's objections are generally grouped by the parties into four subject areas. For the sake of clarity, the Court addresses the objections as presented.

### A) Restriction to Minimum Limits UIM Coverage (topics 2, 3, 4, 5, 7, 8, 9, 10, 14, 15, 16, 17, 18 & 19).

Defendant moves the Court to preclude Plaintiff from deposing its witness(es) about anything other than minimum limits UIM coverage, and objects on this ground to fourteen of Plaintiff's proposed topics. [*See* Doc. 65, pp. 5-8; Doc. 72, p.1]. Defendant argues that Plaintiff's lawsuit deals solely with minimum limits UIM coverage. As such, Defendant argues that any of Plaintiff's topics which delve into matters beyond minimum limits UIM coverage are overly broad, irrelevant and not proportional to this lawsuit. [Doc. 65, p. 4]. In response, Plaintiff argues that "[p]utative class members that purchased underinsured motorist coverage at higher limits had the same reasonable expectation as Helen and other insureds that purchased underinsured motorist coverage at minimal limits." [Doc. 70, p. 4]. In other words, Plaintiff posits that "a jury may still decide that Defendant mislead (sic) Helen into purchasing a product that, ultimately and in most scenarios, fails to provide valuable coverage. The very same may hold true for other similarly situated who purchased underinsured motorist coverage at higher limits." [*id.*, p. 6].

At bottom, this case is about Plaintiff's expectation when she and others similarly situated to her purchased UIM coverage from Defendant. If Plaintiff is correct that the coverage she purchased is illusory, then she will have proved a breach of contract and violations of New Mexico statutory law. On the other hand, Defendant may convince Judge Browning that its coverage is not illusory. However, that is not the issue before the Court. Rather, the issue is

whether Plaintiff may depose Defendant's witness about matters exceeding minimum limits UIM coverage during discovery. The Court finds that she may, for several reasons.

First, the putative class in this case is not limited to insureds that purchased minimum limits UIM coverage. Rather, Plaintiff seeks to represent *any* policy holder who was denied UIM benefits "due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a 'difference state.'" [Doc. 12, p.9]. This extends to insureds who purchased greater than minimal limits UIM coverage. As Plaintiff argues, "Defendant never identifies why the analysis for underinsureds with higher than minimal limits is at all different than the analysis this Court has already gone through as to Helen's situation with minimal limits." [Doc. 70, p. 6].

Second, a reasonable jury could determine that Defendant's sale of allegedly illusory coverage violates Plaintiff's insurance contract and New Mexico public policy, regardless of the amount of coverage purchased. As such, Plaintiff should be permitted to inquire into matters exceeding the narrow scope Defendant proposes.

Finally, many of the topics that Defendant would ask the Court to limit are aimed at Defendant's general practices pertaining to UIM coverage, not limited to minimum limits. For example, topic 2 seeks base rates used to calculate UIM premiums; topic 3, "rate filings within New Mexico;" topic 4, standard applications for automobile insurance used by FIC in New Mexico; topic 5, standard automobile policies used by FIC in New Mexico; topic 7, "the process and methodology used to identify FIC's New Mexico insureds that have underinsured motorist coverage; topic 8, "the process and methodology used to gather claims files that correspond to the New Mexico insureds by FIC that either inquired about or actually submitted a claim for underinsured motorist coverage," etc…. [*See* Doc. 65, pp. 5-8]. However, Defendant has

provided the Court with no reason why these topics should be limited other than that Plaintiff's case only involves minimum limits UIM coverage. The Court having found otherwise, Plaintiff's topics will not be limited to minimum limits UIM coverage, but all UIM policy holders insured by Defendant.

Finally, Defendant argues that topics 3, 4, 5, 9 and 10 are not even limited to underinsured motorist coverage and, for that reason alone, are "fatally overbroad." [Doc. 65, p. 11]. The Court agrees with Defendant on this point. Plaintiff's questioning is inherently limited to the class she seeks to represent, which, in this case, is limited to insureds who maintained underinsurance coverage with Defendant. To the extent that Plaintiff is seeking to question Defendant's witness beyond these parameters, Defendant's Motion is granted.

### B) Attorney-Client and Work-Product Privileges and their applicability to topic 12.

Defendant argues that Plaintiff's topic 12 "improperly seeks information protected by the attorney-client and work product privileges." [Doc. 65, p. 11]. The Court concludes that this topic, which would require Defendant's witness to testify concerning "NMSA § 66-5-301 and case law that interprets the statute," does not go beyond the permissible scope of discovery. As such, Defendant's Motion will be denied as to it.

As noted above, the scope of discovery permits a party to inquire into any matter which is relevant to a claim or defense and which is not privileged. "Pursuant to rule 501 of the Federal Rules of Evidence, state law supplies the rules concerning attorney-client privilege in diversity cases." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (citing *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir.1998)). "The attorney-client privilege protects communications between counsel and client unless the client gives consent for disclosure." *Duran v. Home Depot USA, Inc.*, CIV 13-0608 WPJ/SCY, 2015 WL 13666480, at

7

*2 (D.N.M. Mar. 12, 2015). The privilege protects communications, "if the communications were made for the purpose of acquiring legal advice for the client." *S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 13, 143 N.M. 215, 221, 175 P.3d 309, 315. "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–1551 (10th Cir. 1995). "New Mexico requires four elements to establish the attorney-client privilege: '(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client.'" *Baylon v. Wells Fargo Bank, N.A.*, CIV 12-0052 MCA/KBM, 2012 WL 12819981, at *2 (D.N.M. Dec. 21, 2012) (quoting *S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 175 P.3d 309, 315 (N.M. Ct. App. 2007)), *objections overruled, Baylon v. Wells Fargo Bank, N.A.*, 2013 WL 12164723 (D.N.M. Nov. 20, 2013). The proponent of the privilege has the burden of showing its applicability. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010).

Defendant has not identified communications in this case that are exempt from disclosure related to the statute and case law at issue. Even if it had, Defendant has failed to show the Court how such communications come within the ambit of the attorney-client privilege. Not all statements by an attorney qualify for the privilege, and business advice, even that which is based on legal principles, does not qualify for protection. *See S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 23, 143 N.M. 215, 224, 175 P.3d 309, 318 ("The privilege protects communications generated or received by an attorney giving legal advice but does not protect communications derived from an attorney giving business advice or acting in some other capacity."). "Only if the attorney is 'acting as a lawyer' giving advice with respect to the legal

implications of a proposed course of conduct may the privilege be properly invoked." *Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 16, 317 P.3d 856, 861.

Defendant, as the party seeking the protective order and the proponent of the privilege, bears the burden of establishing that it applies to topic 12. The Court finds that Defendant has failed to demonstrate that *all* knowledge it maintains about Section 66-5-301 of the New Mexico statutes and case law interpreting it is purely legal in nature. For example, while the Court recognizes that the initial advice Defendant may have received concerning the statute would have been legal in nature, Defendant may have taken this advice and implemented policies based on it. Such policies would not be protected by the attorney client privilege because their implementation and dissemination would destroy the confidential nature of the communication and arguably transform advice of a legal nature into that which is business-related. To the extent that Plaintiff seeks Defendant's knowledge about the statute as it relates to Defendant's claims handling decisions as a matter of business practice, or as a matter of business-related decision making, the same may not be protected. On the other hand, if Defendant's knowledge about the statute is limited to the advice given by its attorneys, the same would be protected. The Court cannot rule as to every question Plaintiff might pose in the abstract. Therefore, the Court will deny a protective order as to topic 12 on the grounds of the attorney-client privilege.

This leaves the work-product doctrine, which "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (citations omitted). "The work-product protection is broader in scope than attorney-client privilege because the privilege extends only to client communications, while the work-product protection encompasses much that has its source outside client communications." *Id.* Following its formulation in *Hickman v. Taylor*, 329

U.S. 495, 499–500 (1947), the work-product doctrine was incorporated into Federal Rule of Civil Procedure 26(b)(3), which provides that:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative…. But … those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A); *see In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006). "[T]he purpose of the work-product doctrine is to enable counsel to prepare a case in privacy." *Qwest*, 450 F.3d at 1195; *Hickman*, 329 U.S. at 510 ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."). "Federal law governs the work product doctrine in federal court, even in diversity cases based upon state causes of action." *Baylon*, 2012 WL 12819335, at *3. "[T]he party asserting work product privilege has the burden of showing the applicability of the doctrine." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010) (citing *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042 (10th Cir. 1998)).

Importantly, "[t]he work product doctrine was conceived in order to protect the lawyer's mental processes developed *for a specific case*." *Baylon*, 2012 WL 12819335, at *4 (emphasis added). "Work product protection only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored *in anticipation of litigation*." *In re Grand Jury Proceedings*, 616 F.3d at 1185 (emphasis added) (quoting *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006)). "As such, the work-product doctrine only prevents disclosure of information that was prepared by the attorney in anticipation of litigation or for trial." *In re Grand Jury Proceedings*, 616 F.3d at 1184.

Defendant argues that the work-product doctrine shields it from having to provide a witness who can address topic 12. However, to the extent that Plaintiff seeks information that was not intended for use in litigation or at trial, the work-product doctrine does not apply. "Documents produced in the regular course of business, even by attorneys, do not automatically qualify as attorney work product." *Baylon*, 2012 WL 12819335, at *4. Thus, to the extent that Defendant or its attorneys provided an analysis for "NMSA § 66-5-301 and case law that interprets the statute" prior to the onset of the instant litigation, it must provide a witness to address Plaintiff's topic 12.

Defendant disputes this result, relying on three non-binding district court cases. [*See* Doc. 12 at 12-13]. However, the Court finds these cases to be inapposite, as they involved protective orders directed at preserving work product formulated during an investigation by a government agency, *see S.E.C. v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003), *aff'd, S.E.C. v. Buntrock*, 2004 WL 1470278 (N.D. Ill. June 29, 2004); *S.E.C. v. Rosenfeld*, 1997 WL 576021, at *3 (S.D.N.Y. Sept. 16, 1997), or a request to depose a party's witness about the search it performed of its files in the course of discovery, which were "overseen and managed by counsel." *See Club v. BNSF Ry. Co.*, 2016 WL 4528452, at *4 (W.D. Wash. Aug. 30, 2016). None of these cases address the salient issue here: whether the attorney-client or work-product privileges protect business advice received from an attorney or business policies and practices derived from legal advice.

**C) Vague and Ambiguous (topics 8, 10, 12, 14 and 15).**

Defendant argues that certain of Plaintiff's topics are "fatally vague and ambiguous, leaving Defendant and the Court to engage in sheer speculation as to what information Plaintiff

is seeking in these Topics." [Doc. 65, p. 14]. The Court disagrees that the topics are vague and ambiguous, and therefore declines to issue a protective order on these grounds.

Take, for example, topic 8. The topic asks about "[t]he process and methodology used to gather claims files that correspond to the New Mexico insureds by FIC that either inquired about or actually submitted a claim for underinsured motorist coverage." [*Id.*, p.15]. Defendant argues that phrase "inquired about" is vague and ambiguous, but the Court disagrees. The topic clearly seeks information concerning Defendant's ability to track and log the number of insureds who either actually submitted a claim for underinsured motorist coverage or who sought information regarding such a claim. However, to the extent that Defendant argues that there is no method available to identify insureds who inquired about an underinsured motorist claim, Plaintiff must accept that response.

Topic 12 (addressed above) is not vague or ambiguous. Defendant argues that it is, because it is not clear what aspect of the statute the topic encompasses and what case law would be relevant. However, the Court cannot imagine a way that Plaintiff could have been clearer in setting forth the topic. Plainly, Plaintiff seeks Defendant's knowledge as to *any* aspect of the statute and subsequent cases interpreting it.

Topic 10, which asks Defendant to designate a witness to discuss the "identification and description of computer assisted or intuitive technology used by FIC to both adjust claims and to calculate premiums for New Mexico insureds" is also permissibly concrete. Defendant argues that it is not, because it is unclear what Plaintiff means by "computer assisted or intuitive technology." [*Id.*, p.15]. The Court disagrees. Plaintiff obviously is seeking information related to the technology Defendant uses to process claims.

Topic 14, which seeks to address "[a]ny any all strategic planning centered on FIC's understanding that New Mexico is a 'difference state'" is also not impermissibly vague. Defendant argues that Plaintiff's use of the term "strategic planning centered on FIC's understanding" is "incomprehensible." [*Id.*, p.15]. The Court disagrees. The topic clearly seeks information regarding Defendant's business strategy as it relates to the sale of underinsured motorist coverage in New Mexico.

Finally, Defendant objects to topic 15, because Plaintiff uses the term "experience data" when asking about underinsured motorist coverage. While the Court agrees that Plaintiff could have picked a more specific term, this does not render the entire topic, which seeks information on limits of coverage, dollars of losses paid and reserved, number of claims reported and paid, and premiums and other fees charges, wholly vague or ambiguous. [*See id.*]. Therefore, the Court finds that Defendant has failed to show good cause sufficient to warrant a protective order as to this topic.

**D) Overbroad, Irrelevant and Not Proportional to the Needs of this Case (topics 6, 11 & 13).**

Finally, Defendant seeks a protective order precluding Plaintiff from inquiring into three topics on the grounds of overbreadth, irrelevance, and disproportionality. For the following reasons, the Court is not persuaded.

Defendant argues that the first topic, No. 6, which seeks information regarding the calculation of underinsured motorist coverage premiums in states that charge separately for underinsured motorist coverage, is overly broad and irrelevant because "this case has nothing to do with Defendant's practices outside of New Mexico." [*See* Doc. 65, p. 21]. Plaintiff argues, and the Court agrees, that this information is relevant to the issue of damages, should Plaintiff prove liability as to a subclass of FIC insureds who paid a premium for coverage that was

arguably illusory. [*See* Doc. 70, p.12]. Therefore, Defendant must provide a witness for this topic.

Likewise, contrary to Defendant's position, topic 11, which asks about "[t]he training FIC might provide to its adjusters and agents that sell underinsured motorist coverage in New Mexico" is also relevant and proportional to the needs of this case. [*See* Doc. 65, p. 21]. Defendant protests that it has already provided Plaintiff Product Guides and other documents distributed to agents, but this does not preclude Plaintiff from inquiring into the topic. Defendant's Motion is denied as to topic 11.

Finally, Defendant argues that Plaintiff should be precluded from inquiring into topic 13, which addresses "[c]ommunications, written or electronic, between FIC and its New Mexico agents and/or brokers, pertaining to New Mexico underinsured motorist coverage." [Doc. 62, p. 16]. First, Defendant argues that the topic is objectionable because it has no means of capturing such information, "and FIC has no reason to assume that the communications Plaintiff described ever occurred." [*Id.*, p. 17]. To the extent that this is true, Plaintiff must accept Defendant's response. However, to the extent that Defendant is able to respond to the topic, the Court finds that it is relevant and proportional to the needs of this case. For example, Defendant admits that it has an "Inside Sales Team that may interface with independent agents a few times per year." [*Id.*]. Any information maintained by the Inside Sales Team regarding New Mexico underinsured motorist coverage is relevant to this case.

As an alternative ground for protection as to this topic, Defendant, relying on *Willis v. GEICO Gen. Ins. Co.*, CIV 13-0280 KG/KK, 2016 WL1749665, at *9 (D.N.M. 2016), argues that because Plaintiff has not alleged that its agents or brokers engaged in wrongful actions, Defendant's communications to them are irrelevant. The Court has reviewed *Willis*, and does not

14

find it persuasive here. Whereas only extra-contractual claims against the insurer were at issue in *Willis*, *see* 2016 WL 1749665, at *1, here, Plaintiff brings claims for breach of contract and breach of the covenant of good faith and fair dealing. As such, the Court finds that Defendant's communications to its agents are relevant to whether it breached its insurance contract with Plaintiff in this case. Defendant argues that "[j]ust because Defendant may have communicated with agents and brokers regarding underinsured motorist coverage, that does not provide evidence of Plaintiff's theory in this lawsuit." [Doc. 65, p. 20]. However, the Court disagrees. Depending on the subject matter of the communications, the same may very well demonstrate Defendant's knowledge that the insurance it was selling in New Mexico is illusory.

IV) **CONCLUSION**

In sum, the Court is granting Defendant's motion only insofar as Plaintiff's topics exceed the permissible scope of discovery, which, in this lawsuit, is restricted to underinsured motorist coverage. Otherwise, Defendant has failed to show good cause to preclude questioning on many of the topics Plaintiff proffered. The Court recognizes that preparing its witnesses may prove burdensome in light of these rulings. However, "[w]hile counsel will have to carefully prepare the 30(b)(6) representative, they must always do so." *In Re: Santa Fe Natural Tobacco Company Marketing & Sales Practices and Products Liability Litigation*, 2018 WL 3972909, at *5 (D.N.M. Aug. 18, 2018).

Wherefore, Defendant's Motion seeking a protective order [Doc. 65] is hereby granted in part and denied in part, for the reasons stated above.

SO ORDERED.

_____
Jerry H. Ritter
United States Magistrate Judge

15