IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HELEN BHASKER, on behalf of herself
and all others similarly situated,

      Plaintiff,

vs.                                                    1:17-cv-00260-KWR/JHR

FINANCIAL INDEMNITY COMPANY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment **(Docs. 141, 142, 143).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's Motion for Summary Judgment is not well-taken and, therefore, is **DENIED.**

This putative class action arises out of a dispute over "underinsured motorist coverage." In New Mexico, underinsured motorist coverage generally consists of the difference between an insured's uninsured motorist coverage limit and a tortfeasor's liability coverage. NMSA § 66-5-301 ("'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.").

Pursuant to this statutory offset under NMSA § 66-5-301, underinsured motorist coverage at minimum limits generally does not exist. If a tortfeasor's liability limit is $25,000 and an

insured's uninsured motorist coverage limit is $25,000, the insured will rarely access the underinsured motorist coverage portion of his or her motorist insurance.

Plaintiff alleges that Defendant sold her underinsured motorist coverage but did not disclose that it had little value.

This case is now before the Court following the New Mexico Supreme Court's answer to a certified question in *Crutcher*. The New Mexico Supreme Court was asked whether (1) underinsured motorist coverage the minimum limits was illusory, and if so, (2) whether insurers could charge a premium for that illusory coverage. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 1, 501 P.3d 433, 434. The New Mexico Supreme Court held that underinsured motorist coverage at minimum limits, as in this case, is illusory in the sense that it misleads insureds into believing they are purchasing coverage when they are not. *Id.* at ¶ 2. However, *Crutcher* noted that this coverage was statutorily authorized, and therefore the Court would not prohibit insurers from collecting premiums for minimum underinsured motorist coverage if they issued a disclosure or "exclusion."

Defendant moves for summary judgment on all claims in this case in light of *Crutcher*. Defendant primarily bases its motion on the belief that *Crutcher* applies prospectively as to the misrepresentation claims and grants Defendant immunity from misrepresentation claims which accrued prior to the *Crutcher* opinion. Defendant also seeks summary judgment on the "fraud and misrepresentation claims" and punitive damages, asserting that there is no genuine dispute of material fact precluding summary judgment.

The Court disagrees and concludes that *Crutcher* does not bar the misrepresentation claims in this case which accrued prior to the issuance of the *Crutcher* opinion. Plaintiff has also shown a genuine dispute of material fact precluding summary judgment.

BACKGROUND

On June 24, 2015, Plaintiff was injured in an automobile collision with another driver. **Doc. 12 at ¶¶ 11-17.** The tortfeasor carried minimum limits of liability coverage, that is, $25,000 per person and $50,000 per accident. Plaintiff received the full extent of liability coverage carried by the tortfeasor, but that coverage was insufficient to fully compensate Plaintiff for her damages. **Doc. 12 at ¶ 18.** When Plaintiff requested that Defendant provide her with the UIM benefits for which he paid a premium, Defendant denied her claim. *Id.* at ¶ 44

At the time of the collision Plaintiff was insured by Defendant. She had purchased uninsured and underinsured motorist coverage in the amount of $25,000 per person and $50,000 per occurrence. According to Plaintiff, the insurance application and policy issued by Defendant failed to advise her that UIM coverage is "illusory" in the event of an accident involving a minimally insured driver. (*Id.*, ¶¶ 32-33, 47.). Plaintiff alleges that "Defendant misrepresented to Plaintiff that she would benefit from underinsured coverage when they knew, or should have known, that the coverage was meaningless. [Defendant's] misrepresentations or lack of representations were made, knowingly and willfully, with the intent to deceive and induce Plaintiff in purchasing underinsured coverage." *Id.* at ¶ 29. Plaintiff alleges that the "policy failed to state that underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving a minimally insured driver." *Id.* at ¶ 32. The policy documents also "materially misrepresented underinsured coverage and did not contain clear, unambiguous language regarding the effects of New Mexico's underinsured coverage offset laws." **Doc. 12 at ¶ 39.** "Defendant's [policy] did not alert Plaintiff, nor made clear to the ordinary and similarly situated insured, the fact that the New Mexico offset law drastically and materially diminished payment of benefits arising from a covered occurrence under the policy. Specifically, there is virtually no possible

3

underinsured minimum limits claim available to the Plaintiff and other similarly situated members of the class." *Id.* at ¶ 43.

Plaintiff subsequently filed this putative class action, asserting the following claims:

| | |
|---|---|
| Count I: | Negligence; |
| Count II: | Violations of the Unfair Trade Practices Act (N.M.S.A.1978, Section 57-12-2) ("UPA"); |
| Count III: | Violations of the Unfair Insurance Practices Act (N.M.S.A.1978, §§ 59A–16–1 *et seq.*) ("UIPA"); |
| Count IV: | Breach of Contract and claim for Motorist Coverage |
| Count V: | Breach of Contract and Covenant of Good Faith and Fair Dealing; |
| Count VI: | Injunctive Relief; |
| Count VII: | Declaratory Judgment; and |
| Count VIII: | Punitive Damages. |

**Doc. 12.**

In *Crutcher v. Liberty Mut. Ins. Co., et al.*, Case No.: 18-cv-00412-JCH-LF (D.N.M.), United States District Judge Judith C. Herrera certified the following questions to the New Mexico Supreme Court:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher*, 2019 WL 12661166, at *4. This matter was stayed pending the New Mexico Supreme Court's answer. **Doc. 140.** As explained below, the New Mexico Supreme Court answered this question and Defendant moved for summary judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

## DISCUSSION

**I.** **<u>*Crutcher v. Liberty Mut. Ins. Co.* does not mandate dismissal of the claims in this case</u>.**

Defendant appears to seek dismissal of all claims in this case in light of the New Mexico Supreme Court's decision in *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, 501 P.3d 433(N.M. 2022). Defendant appears to believe that *Crutcher* applies prospectively and grants it immunity from pre-*Crutcher* misrepresentation claims as to minimum limit underinsured motorist coverage. *See* **Doc. 141 at 8** ("under Crutcher, insurers such as Defendant here had no obligation to make such a disclosure to insureds, such as Plaintiff … here… that, in turn, fully negates Plaintiff's liability theory that Defendant acted wrongfully by failing to make this type of disclosure."). The Court disagrees and concludes that *Crutcher* does not mandate summary judgment in Defendant's favor.

In *Crutcher*, United States District Judge Judith Herrera certified, and the New Mexico Supreme Court accepted, the following question:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher v. Liberty Mutual Insurance* Company, 1:18-cv-412, Doc. 53 at 8, Certification Order to the N.M. Supreme Ct. (D.N.M. Jan. 9, 2019) (the "certified question").

The New Mexico Supreme Court answered the question, concluding that (1) underinsured motorist coverage at the minimum limits was illusory in the sense that it was misleading to the average insured, but (2) insurers were permitted by statute to charge premiums for minimum limit underinsured motorist coverage as long as the limitations of the coverage were disclosed to insureds in the form of an "exclusion." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33. "Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage." *Id.* at ¶2. The *Crutcher* court concluded that "this type of policy is illusory in that it may mislead minimum UM/UIM policy holders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." *Id.* at ¶ 33

In other words, *Crutcher* was consistent with several cases in this court, including *Bhasker, Apodaca, and Schwartz,* all of which held that plaintiffs had stated plausible claims of misrepresentation based on similar policies containing underinsured motorist coverage. *See Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191, 1238 (D.N.M. 2018) (Browning, J.); *Apodaca v. Young Am. Ins. Co.*, No. CV 18-0399 RB/JHR, 2019 WL 231757, at *5 (D.N.M. Jan. 16, 2019) (Brack, J.); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 1:18-CV-00328-WJ-SCY, 2018 WL 4148434, at *5 (D.N.M. Aug. 30, 2018) (Johnson, J.).

*Schwartz v. State Farm* reasoned that "merely reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." *Schwartz v. State Farm*, 1:18-cv-328, 2018 WL 4148434, at *6 (D.N.M. 2018). *Crutcher* cited to this language and reasoned that "the average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM insurance, he or she will never receive the benefit of underinsured motorist coverage." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 30.

To get around *Crutcher*'s holding, Defendant argues that *Crutcher* applies prospectively, *i.e.,* that Plaintiff cannot assert misrepresentation claims as to minimum limit underinsured motorist coverage which accrued prior to *Crutcher*.[1]  Defendant appears to believe that *Crutcher* grants it immunity from misrepresentation claims that arose prior to the issuance of the *Crutcher* opinion.  The Court disagrees.

New Mexico applies "a presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively." *Beavers,* 118 N.M. at 398, 881 P.2d at 1383. "The presumption of retroactive application can be overcome by an express declaration, in the case announcing the new rule, that the rule is intended to operate with selective prospectivity or pure prospectivity." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 170, 245 P.3d

---

[1] Plaintiff alleged that both minimum limit underinsured motorist coverage and higher limits were misleading to insureds.  Defendant's motion does not appear to differentiate the two, therefore the Court declines to do so *sua sponte* **Doc. 141.**  Judge Browning previously concluded in this case that Plaintiff stated a claim for misrepresentation even as to the higher limit underinsured motorist coverage.  *See Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1148 (D.N.M. 2019) (Plaintiff "may proceed on her theory that Financial Indemnity's misleading and deceptive business practices engendered for the proposed class -- to include insureds who purchased non-minimum limits coverage -- a reasonable expectation that UIM insurance provides additional coverage when the insured's damages exceed what is available from the tortfeasor.").

1214, 1222.  If the New Mexico Supreme Court does not expressly state whether a new rule is intended to operate prospectively, a lower court may determine whether the presumption of retroactive application is overcome by applying three factors. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 170, 245 P.3d 1214, 1222.

Defendant asserts that certain language, including the word "hereafter" is an express statement by the New Mexico Supreme Court that it intended *Crutcher* to apply prospectively. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 32 ("Therefore, hereafter, the insurer shall bear the burden of disclosure to the policyholder that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance. Consistent with the purpose and intent of the UIM statute, this disclosure will allow purchasers to make a fully informed decision when selecting UM/UIM insurance coverage.").  The Court disagrees, as explained below, the New Mexico Supreme Court meant that "hereafter" it would not prohibit the charging of premiums for minimum limit underinsured motorist coverage if the policy contained a disclosure or exclusion explaining the limited value of minimum limit underinsured motorist coverage.

The use of the word "hereafter" must be interpreted in the context of the certified question addressed by the New Mexico Supreme Court.  The certified question asked in part whether insurance companies could lawfully charge a premium for underinsured motorist coverage at the minimum limit.  The New Mexico Supreme Court answered that question in the affirmative, as long as "every insurer … adequately disclose[s] the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy. If the insurer provides adequate disclosure, it may lawfully charge a premium for such coverage." *Crutcher v. Liberty Mut. Ins.*

*Co.*, 2022-NMSC-001, ¶ 33, 2021 WL 4520651.  The New Mexico Supreme Court concluded that it would not prohibit insurers from charging a premium for underinsured motorist coverage as long as an appropriate disclosure was provided. *Id.*

Read in this context, the New Mexico Supreme Court meant that, "hereafter", insurers may only charge premiums for minimum limit underinsured motorist coverage with proper disclosure. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 2 ("We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit. We therefore **hold that an insurer must adequately disclose** the limitations of minimum UM/UIM coverage—namely, that under the policies described in this case, a policyholder may never receive underinsurance motorist coverage. **Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage**.") (emphasis added).  Therefore, the word "hereafter" was used in reference to the disclosure requirements for charging premiums for illusory underinsured motorist coverage and did not concern misrepresentation claims which had already accrued.

Moreover, Defendant's argument ignores the reasoning of the rest of the *Crutcher* opinion. The New Mexico Supreme Court concluded that the minimum limit underinsured motorist coverage in *Crutcher* was illusory in the sense that it was misleading to the average insured.  The New Mexico Supreme Court further reasoned that the statutory language which authorized the sale of minimum limit underinsured motorist coverage did not provide insurers immunity from misrepresentation claims. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26 ("[W]e find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the

9

Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels."). The *Crutcher* court also stated that "[w]e refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26. Defendant appears to believe that the New Mexico Supreme Court gave it immunity from misrepresentation claims as to its underinsured motorist coverage. Such immunity would be inconsistent with the New Mexico Supreme Court's reasoning that the sale of minimum level underinsured motorist coverage was misleading to insureds and the statutory language did not provide insurers with immunity.

The Court also does not believe that the use of the word "hereafter" by itself rises to the level generally used by the New Mexico Supreme Court in announcing that a rule is prospective. Generally, the New Mexico Supreme Court has expressly stated when a case applies prospectively and explained with reasoned analysis why it applies prospectively. *Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 45-51, 378 P.3d 13, 32 (analyzing whether rule should apply prospectively and examining factors); *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 30, 147 N.M. 678, 688–89, 228 P.3d 462, 472–73 (analyzing factors and applying them); *Jordan v. Allstate Ins. Co.,* 2010-NMSC-051, ¶ 29 (same). The New Mexico Supreme Court did not do so in *Crutcher*.

Therefore, the Court finds that the New Mexico Supreme Court did not expressly state that *Crutcher* applies prospectively as to misrepresentation claims.

Moreover, the presumption of retroactivity has not been overcome. The New Mexico Supreme Court uses three factors to determine whether the presumption of retroactive application

has been overcome. In considering these factors, the Court concludes the presumption of retroactive application has not been overcome as to misrepresentation claims.

Under the first factor, " 'the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.' " *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Here, the New Mexico Supreme Court clearly considered its *Crutcher* ruling as flowing from, and foreshadowed by, its ruling in *Weed Warrior. See Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 21, *citing Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209 ("[t]he injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous."). Insurers were on notice of the issues in this case. Moreover, *Crutcher* expressly held that the plain language of the statute did not provide insurers immunity from misrepresentation claims. 2022-NMSC-001 at ¶ 26. Finally, the New Mexico Supreme Court applied well established misrepresentation law to the *Crutcher* case. Therefore, this factor weighs in favor of retroactivity.

Second, the Court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). For the same reasons as above, this factor weighs in favor of retroactive application. The *Crutcher* court was clear that although minimum limit underinsured coverage was statutorily authorized, nothing in the statute authorized insurers to misrepresent the extent of underinsured motorist coverage.

Third, this Court must consider "the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Here, retroactive application is not inequitable to insurers. The New Mexico Supreme Court clearly believed it was inequitable for insureds to believe they purchased coverage when none was provided. The New Mexico Supreme Court has previously forced insurers to bear the cost of retroactive rules. For example, it has previously held that "[o]n balance, we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 29, 149 N.M. 162, 171, 245 P.3d 1214, 1223.

The Court concludes that the presumption of retroactive application has not been overcome. In other words, *Crutcher* does not provide Defendant with immunity for misrepresentation claims which arose pre-*Crutcher*.

Finally, Defendant argues that it cannot be held liable for not paying underinsured motorist coverage because they are merely following the statutory offset. However, as the New Mexico Supreme Court stated, the statutory offset clearly does not provide immunity from claims that Defendant misrepresented the nature or value of underinsured motorist coverage. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26, 501 P.3d 433, 439 ("We find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the

selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels.").

## II. Genuine dispute of material fact precludes summary judgment for fraud and misrepresentation claims.

Defendant next appears to argue that Counts I, II and III fail because Plaintiff has failed to show that there was a misrepresentation or misleading statement. **Doc. 141 at 9.** Defendant asserts that the fraud and misrepresentation claims should be dismissed because Plaintiff does not recall her interactions with the insurance agents and cannot identify any verbal misrepresentations. Defendant also asserts there are instances where it will pay out claims for minimum underinsured motorist coverage, which proves that its coverage is not illusory. The Court disagrees.

As explained above in Section I, *Crutcher* did not foreclose misrepresentation claims arising from written policies which failed to adequately explain to insureds how underinsured motorist coverage works. Moreover, Plaintiff asserted material facts which create a genuine dispute as to whether the policy documents misled Plaintiff or misrepresented the extent of underinsured motorist coverage. **Plaintiff's Undisputed Material Facts, Doc. 147, UMF V, W, X, Y, Z, AA.**

Defendant generally shows that Plaintiff does not remember any oral representations from the agents who sold Plaintiff the insurance. *See* **Doc. 141 at 9-12.** It is unclear why that merits summary judgment in Defendant's favor here given that Plaintiff has shown a genuine dispute that there is a written misrepresentation. Defendant has not cited to case law showing that this evidence is dispositive and warrants summary judgment on Plaintiff's claims.

Rather, Plaintiff has shown there is a genuine dispute that policy provisions were illusory in that they misled reasonable insureds into believing they would receive underinsured motorist

coverage when they would not. As Plaintiff argues, and Defendant admits, the written representations control over any oral representations. **Doc. 147, UMF Y; Doc. 154 at 4 (admitting fact Y)**; *see also United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 10, 285 P.3d 644, 648 *citing Cal. Cas. Ins. Co. v. Garcia–Price*, 2003–NMCA–044, ¶ 20, 133 N.M. 439, 63 P.3d 1159; *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003–NMSC–011, ¶ 14 n. 3, 133 N.M. 661, 68 P.3d 901. ("Insurance policies almost always are contracts of adhesion, meaning that 'the insurance company controls the language' and 'the insured has no bargaining power.'" *see also Mark V, Inc. v. Mellekas,* 1993-NMSC-001, ¶ 13, 114 N.M. 778, 782, 845 P.2d 1232, 1236 ("no evidence should be received when its purpose or effect is to contradict or vary the agreement's terms.").

Defendant appears to assert that the fact Plaintiff bought the policy through independent agents insulates it from claims of written misrepresentations. **Doc. 141 at 12.** However, Defendant has not cited to any law in support of that argument. Moreover, Plaintiff has shown a genuine dispute exists as to whether these independent agents acted on behalf of Defendant. **Plaintiff's Material Facts, Doc. 147, UMF E, F, G, H, I, K, M, and N.**

Defendant also presents some evidence that its underinsured motorist coverage has some value. *See* **Doc. 142.** Defendant argues that this value shows that its underinsured motorist coverage is not illusory or misleading to insureds. Although this may be relevant evidence, the Court concludes that this evidence is not sufficient to show there is no genuine dispute as to the misrepresentation claims. The Court agrees with Judge Browning's reasoning that a showing of some value does not necessarily foreclose the misrepresentation claims. *Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191, 1238 (D.N.M. 2018) ("Bhasker seems to be arguing, generally, that her UM/UIM policy did not cover what she thought it would, in which case the UIM coverage

14

was illusory in the sense that it appeared to be something it was not. According to her Complaint, she believes her policy's UIM component is worth nothing or close to nothing. Consequently, even if the Court agreed with Financial Indemnity that the policy's UIM coverage has some value, that designation would not foreclose Bhasker's claims that Financial Indemnity misled her about what the UM/UIM policy covered.").

### III. <u>**Punitive Damages.**</u>

Defendant asserts that even if the claims survive, the Court should dismiss the "extra-contractual damages." The Court assumes that Defendant is referring to punitive damages.

To assert punitive damages, Plaintiff must show that Defendant had a culpable mental state. In insurance actions, a culpable mental state may include willfulness or reckless disregard. "A mental state sufficient to support an award of punitive damages will exist when the defendant acts with reckless disregard for the rights of the plaintiff—i.e., when the defendant *knows* of potential harm to the interests of the plaintiff but nonetheless utterly fail[s] to exercise care to avoid the harm." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 26, 118 N.M. 203, 211, 880 P.2d 300, 308 (internal citations omitted).

Defendant asserts it did not have a culpable mental state because (1) its actions were authorized by law and (2) the underinsured motorist coverage retained some value for policy holders. Here, Plaintiff has shown a genuine dispute of material fact exists as to whether Defendant acted willfully or in reckless disregard of the potential harm to Plaintiff's interests.

Defendant argues that it was merely complying with New Mexico's statutory scheme, which proves that it was not acting willfully. The Court disagrees. The New Mexico Supreme Court held that:

> we find no merit in Defendant's argument that t**he language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher**. Certainly, while the Legislature authorized the selling of premiums together, **its**

15

> **intent was not to sanction the deception of those consumers in their selection of policies and coverage levels**. We have long held that:
>> The courts of New Mexico assume the average purchaser of automobile insurance will have limited knowledge of insurance law, and we will not impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of UM/UIM coverage desired or required without first receiving information from the insurance company.
>
> *Weed Warrior,* 2010-NMSC-050, ¶ 13, 149 N.M. 157, 245 P.3d 1209 (internal quotation marks and citation omitted)…
>
> …
>
> We refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language.

*Crutcher* at *6 (emphasis added). As explained by the New Mexico Supreme Court, Defendant was not authorized to misrepresent the nature of coverage it sold to Plaintiff.

Moreover, prior to the *Crutcher* decision, at least three cases in this this district concluded that plaintiffs stated a claim that underinsured motorist coverage was illusory, that is, that it was misleading to insureds. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 1:18-CV-00328-WJ-SCY, 2018 WL 4148434, at *5 (D.N.M. Aug. 30, 2018) (Johnson, J.) ("Plaintiff alleges that Defendant misrepresented to her that she would benefit from the underinsured coverage when they should have known that the coverage was meaningless. In other words, Plaintiff argues that Defendant failed to inform her that the coverage she was purchasing would provide little to no coverage."); *Apodaca v. Young Am. Ins. Co.*, No. CV 18-0399 RB/JHR, 2019 WL 231757, at *5 (D.N.M. Jan. 16, 2019) (Brack, J.) ("The crux of Plaintiff's complaint lies in Young America's misrepresentations regarding the benefits she would receive in the event of an accident with another motorist who had the minimum level of automobile insurance coverage. Plaintiff does not simply attack the UM/UIM coverage, but how Young America frames that coverage when selling policies to its insureds. The Court finds that Plaintiff has plausibly pled a claim for negligent misrepresentation and will deny Young America's motion on this issue."); *Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191, 1238 (D.N.M. 2018) (Browning, J.) ("Rather, Bhasker seems to

be arguing, generally, that her UM/UIM policy did not cover what she thought it would, in which case the UIM coverage was illusory in the sense that it appeared to be something it was not. According to her Complaint, she believes her policy's UIM component is worth nothing or close to nothing. Consequently, even if the Court agreed with Financial Indemnity that the policy's UIM coverage has some value, that designation would not foreclose Bhasker's claims that Financial Indemnity misled her about what the UM/UIM policy covered.").

Defendant's responsibility to adequately explain the extent of UM/UIM coverage as the insured is well established. *Progressive Northwestern Ins. Co. v. Weed Warrior Services,* 2010-NMSC-50, 149 N.M. 157, 245 P.3d 1209. Misrepresentation law is well established, and Defendant was also aware that it had a duty to not sell misleading insurance.

The Court concludes that Plaintiff has shown there is a genuine dispute of material fact precluding summary judgment on the punitive damages issue.

## CONCLUSION

Plaintiff has shown there are genuine disputes of material fact precluding summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **(Docs. 141, 142, 143)** is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.



KEA W. RIGGS
UNITED STATES DISTRICT JUDGE