# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HELEN BHASKER, on behalf of herself
and all others similarly situated,

        Plaintiff,

     vs.                                No.: 1:17-cv-00260-KWR-JHR

FINANCIAL INDEMNITY COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Class Certification **(Doc. 152).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's Motion for Class Certification is **NOT WELL-TAKEN** in part and, therefore, is **DENIED.**

This putative class action arises out of a dispute over "underinsured motorist coverage." In New Mexico, underinsured motorist coverage generally consists of the difference between an insured's uninsured motorist coverage limit and a tortfeasor's liability coverage. NMSA § 66-5-301 ("'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.").

Plaintiff argues that pursuant to the statutory offset under NMSA § 66-5-301, underinsured motorist coverage at minimum limits generally does not exist. If a tortfeasor's liability limit is $25,000 and an insured's uninsured motorist coverage limit is $25,000, the insured will rarely

access the underinsured motorist coverage portion of his or her motorist insurance.  Plaintiff alleges that Defendant sold her underinsured motorist coverage but did not disclose that it had limited value.  Defendant asserts there are instances where underinsured motorist coverage at minimum limits has value.

Plaintiff moves to certify this class action.  Defendant argues that certification is inappropriate.  It also argues that certification under Fed. R. Civ. P. 23(b)(3) is inappropriate because individual issues predominate over common ones.

Plaintiff has satisfied the majority of the requirements under Fed. R. Civ. P. 23(a) and (b)(3) for class certification.  However, because of a potential conflict of interest, the Court cannot find at this time that representation is adequate under Fed. R. Civ. P. 23(a)(4).  Plaintiff also did not move to certify class counsel, which would also prevent the court from entering an order certifying the class.  *See* Fed. R. Civ. P. 23(g) ("Unless a statute provides otherwise, a court that certifies a class *must* appoint class counsel.") (emphasis added); Fed. R. Civ. P. 23(b)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).").

## BACKGROUND

On June 24, 2015, Plaintiff was injured in an automobile collision with another driver. **Doc. 12 at ¶¶ 11-17.**  The tortfeasor carried minimum limits of liability coverage, that is, $25,000 per person and $50,000 per accident.  Plaintiff received the full extent of liability coverage carried by the tortfeasor, but that coverage was insufficient to fully compensate Plaintiff for her damages. **Doc. 12 at ¶ 18.**  When Plaintiff requested that Defendant provide her with the UIM benefits for which she paid a premium, Defendant denied her claim. ***Id.*  at ¶ 44**

At the time of the collision Plaintiff was insured by Defendant. She had purchased uninsured and underinsured motorist coverage in the amount of $25,000 per person and $50,000 per occurrence.  According to Plaintiff, the insurance application and policy issued by Defendant failed to advise her that UIM coverage is "illusory" in the event of an accident involving a minimally insured driver. ***Id.*, ¶¶ 32-33, 47**.  Plaintiff alleges that "Defendant misrepresented to Plaintiff that she would benefit from underinsured coverage when they knew, or should have known, that the coverage was meaningless. [Defendant's] misrepresentations or lack of representations were made, knowingly and willfully, with the intent to deceive and induce Plaintiff in purchasing underinsured coverage." ***Id.* at ¶ 29.**  Plaintiff alleges that the "policy failed to state that underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving a minimally insured driver." ***Id.* at ¶ 32.**  The policy documents also "materially misrepresented underinsured coverage and did not contain clear, unambiguous language regarding the effects of New Mexico's underinsured coverage offset laws." **Doc. 12 at ¶ 39.** "Defendant's [policy] did not alert Plaintiff, nor made clear to the ordinary and similarly situated insured, the fact that the New Mexico offset law drastically and materially diminished payment of benefits arising from a covered occurrence under the policy. Specifically, there is virtually no possible underinsured minimum limits claim available to the Plaintiff and other similarly situated members of the class." ***Id.* at ¶ 43.**

Plaintiff subsequently filed this putative class action, asserting the following claims:

Count I:       Negligence;
Count II:      Violations of the Unfair Trade Practices Act (N.M.S.A.1978, Section 57-12-2) ("UPA");
Count III:     Violations of the Unfair Insurance Practices Act (N.M.S.A.1978, §§ 59A–16–1 *et seq.)* ("UIPA");
Count IV:      Breach of Contract and claim for Motorist Coverage
Count V:       Breach of Contract and Covenant of Good Faith and Fair Dealing;
Count VI:      Injunctive Relief;

3

Count VII:  Declaratory Judgment; and

Count VIII:  Punitive Damages.

**Doc. 12.**

In *Crutcher v. Liberty Mut. Ins. Co., et al.*, Case No.: 18-cv-00412-JCH-LF (D.N.M.),

United States District Judge Judith C. Herrera certified the following questions to the New

Mexico Supreme Court:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher*, 2019 WL 12661166, at \*4. This matter was stayed pending the New Mexico Supreme

Court's answer. **Doc. 140.**

The New Mexico Supreme Court answered the question, concluding that (1) underinsured

motorist coverage at the minimum limits was illusory in the sense that it was misleading to the

average insured, but (2) insurers were permitted by statute to charge premiums for minimum limit

underinsured motorist coverage as long as the limitations of the coverage were disclosed to

insureds in the form of an "exclusion." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33.

"Without this disclosure, an insurer may not charge a premium for minimum underinsurance

coverage." *Id.* at ¶2. The *Crutcher* court concluded that "this type of policy is illusory in that it

may mislead minimum UM/UIM policy holders to believe that they will receive underinsured

motorist benefits, when in reality they may never receive such a benefit." *Id.* at ¶ 33. The Court

subsequently denied Defendant's Motion for Summary Judgment.

Plaintiff seeks to certify a class that consists of the following:

> All persons (and their heirs, executors, administrators, successors, and assigns), from whom Defendant collected a premium for underinsured motorist coverage after August 14, 1985 to present, on a policy that was issued or renewed in New

Mexico by Defendants and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorist coverage ("UIM") and/or misleading UIM coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

**Doc. 152 at 16.** Plaintiff also seeks to certify the following subclass:

All Class Members (and their heirs, executors, administrators, successors, and assigns) where an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide an amount of UM/UIM limits per occurrence, but which in fact provides none or a misleading amount of underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available, made a claim with Defendants for underinsured motorist, and who received no UIMBI, or reduced UIMBI, benefits because of application of the *Schmick* offset.

*Id.*

## LEGAL STANDARD

To certify a class under Fed. R. Civ. P. 23, Plaintiff bears the burden of showing that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Plaintiff must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1) –(3).

The Court must engage in a "rigorous analysis of whether the threshold requirements of Rule 23(a) are satisfied." *Shook v. El Paso County*, 3865 F.3d 963, 968 (10th Cir. 2004); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,* 725 F.3d 1213, 1218 (10th Cir. 2013). This is not a pleading standard, and Plaintiff must "affirmatively demonstrate" her compliance with the rules. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011); *XTO Energy, Inc.,* 725 F.3d at 1218 (plaintiff has "strict burden of proof").  "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are

purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations." *Monreal v. Potter,* 367 F.3d 1224, 1238 (10th Cir.2004) (internal quotation marks omitted), *quoted in Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006).

## DISCUSSION

Plaintiff seeks certification of two classes under Fed. R. Civ. P. 23(b)(3).  For the reasons described below, Plaintiff satisfies most of the requirements of certification under Fed. R. Civ. P. 23(a) and (b)(3).  However, certification is not appropriate at this time as Plaintiff has failed to show there is adequate representation under Fed. R. Civ. P. 23(a)(4).

## I.    **Plaintiff has not satisfied all requirements of Fed. R. Civ. P. 23(a).**

### A.    **Numerosity**

Fed. R. Civ. P. 23(a)(1) requires that a "class is so numerous that joinder of all members is impracticable.  There is "no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 436 (10th Cir.1978), *quoted in Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

Although Plaintiff bears the burden of establishing numerosity, she need not establish any precise number of class members at this stage, or have already identified who is part of the class. *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214–15 (10th Cir. 2014); *Neiberger v. Hawkins*, 208 F.R. D. 301, 313 (D. Colo. 2002) ("the exact number of potential members need not be shown").

6

Here, Plaintiff asserts that the class includes thousands of individuals.  Defendant does not argue that Plaintiff failed to establish numerosity.  Therefore, the Court finds that Plaintiff has established that a "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### B.      Commonality

Plaintiff must also show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart*, 131 S.Ct. at 2551.

 "For a common question of law to exist, the putative class must share a discrete legal question of some kind."  *J.B. ex rel Hart*, 186 F.3d at 1289.  "What matters to class certification ... is ... the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Walmart*, 564 U.S. at 350, 131 S.Ct. at 2551.  There must be a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.  "[E]ven a single common question will do." *Wal–Mart,* 131 S.Ct. at 2556; *see also Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014).

Plaintiff asserts the following common questions:

- Whether the insurance contracts constitute illusory coverage;

- Whether Defendant provided adequate disclosure in substantially the same written materials;

- Whether Defendant's acts and practices aimed at the class members constitute a breach of the Defendant's contractual obligations with respect to their New Mexico policyholders;

- Whether Defendant's acts and practices aimed at the class members have breached the implied covenant of good faith and fair dealing with respect to the policies issued to New Mexicans;

- Whether Defendant's acts and practices violate the UPA;

- Whether Defendant's acts and practices violate the UIPA;

- Whether Defendant's acts and practices constitute failure to state a material fact in connection with the sale of the Defendant's insurance policies;

- Whether Defendant's acts and practices have deceived or have had a tendency to deceive the Defendant's policyholders;

- Whether Defendant's acts and practices have been misleading or deceptive;

- The content, interpretation, and legal effect of the Defendant's standard application forms and other standard form documents, given to all class members, insofar as they relate to the acts and practices set forth above;

- The remedies available to Plaintiff and to the Defendant's other New Mexico policyholders or insureds, should it be determined that Defendant's acts and practices have violated its duties to New Mexico policyholders or insureds; and

- The legal and/or factual validity of affirmative defenses that may be alleged by Defendant, which are the same for all class members.

**Doc. 152 at 25-26.**

There is clearly at least one common question of law or fact which would provide common answers for the class.  Plaintiff alleges that Defendant gave common written statements to the class members and asserts that those written statements are misleading or misrepresentations.   Whether a common representation made in a contract to all insureds is lawful is a common question.  *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018) (certifying class action alleging breach of homeowner's insurance contract); *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807, 815 (11th Cir. 2018) (common questions predominate in class action based on Florida consumer protection law arising out of failure to provide promised insurance coverage).  An answer to this question would likely resolve multiple elements of multiple claims in this case.  Defendant mostly argues that other individual issues predominate, making certification under Fed. R. Civ. P. 23(b)(3) inappropriate.  The Court addresses those arguments below.

## C.      Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."  Fed R. Civ. P. 23(a)(3).  The commonality and typicality requirements tend to merge.  *Wal-Mart,* 131 S.Ct. at 2551 n. 5.  "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality. Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010) (internal citations omitted).

Here, the Court finds that Plaintiff is a member of the proposed classes and her interests align with the classes.  The relief she seeks is based on the same evidence and legal theories as the classes.

Defendant argues that Plaintiff is subject to unique defenses which are not typical of the class, because she (1) obtained her insurance through independent agents and (2) in a deposition she did not know much about how she acquired her insurance. However, Plaintiff's legal theory is centered on the alleged misleading statements in the written policies which are substantially similar for all class members. Therefore, the Court rejects Defendant's arguments as irrelevant.

### D.     Adequacy.

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of these two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187 (10th Cir. 2002), *quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff is a member of the two class groups and Plaintiff's interests generally align with the class interests, except as noted below.

Defendant argues that Plaintiff is not an adequate representative of the class because she is unfamiliar with her case. The Court finds that Plaintiff's understanding of her coverage and insurance law is not unusual, and rather, would put her in the same position as most class members.

Plaintiff's attorneys are experienced class action litigators who filed other class actions asserting similar claims against other insurers. They have achieved success for the putative class, and this case apparently spawned several other class actions asserting similar claims against other insurers.

Defendant argues that there is a conflict of interest because the class representative's brother represents the putative class in this case. In support, Defendant cited to a string of case

law indicating that a familial relationship between a class representative and class counsel was a conflict of interest. **Doc. 156 at 32.** In response, Plaintiff did not refute these arguments with citation to case law, but instead argued that there are also two other attorneys representing the class. The Court finds that Plaintiff needs to make a greater showing under this prong.

At issue is whether a familial relationship between the putative class representative and an attorney representing the class creates a conflict of interest which precludes certification.

Neither party has cited to a Tenth Circuit case, and the Court could find none. Upon reviewing the relevant law from other courts of appeals, the Court concludes that a potential conflict may exist because of the familial relationship between the class representative and one of her attorneys. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) ("we conclude that the district court abused its discretion by ignoring London and Ader's significant personal and financial ties. The long-standing personal friendship of London and Ader casts doubt on London's ability to place the interests of the class above that of class counsel."); *Susman v. Lincoln American Corp.,* 561 F.2d 86, 95 (7th Cir.1977). The class representative is a fiduciary to the class, but here she may place the interests of her brother ahead of the class, such as by consenting to a high award of attorney fees or entering into a settlement which benefits her brother over the class. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) ("In situations where there is a close familial bond between a class counsel and a class representative, it seems to us that there is a clear danger that the representative may have some interests in conflict with the best interests of the class as a whole when making decisions that could have an impact on attorney fees."); *Eubank v. Pella Corp.,* 753 F.3d 718, 724 (7th Cir. 2014) ("Only a tiny number of class members would have known about the family relationship between the lead class representative and the lead class counsel—a relationship that created a grave conflict of interest; for the larger

11

the fee award to class counsel, the better off Saltzman's daughter and son-in-law would be financially—and (which sharpened the conflict of interest) by a lot.").

Moreover, "[o]ne foundation of class action law is that the class representative has an obligation to represent the interests of the class in dealings with both the defendant and class counsel. Class representatives need to be capable of saying no if they believe counsel are failing to act in the best interests of the class." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 714–15 (7th Cir. 2015). At least upon viewing the record created by Defendant, the Court is concerned whether Plaintiff is capable of ensuring class counsel acts in the best interest of the class. Plaintiff should make a better record on this issue.

However, it is possible that any concerns regarding potential conflicts of interest can be alleviated by appropriate disclosure to the class. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 714 (7th Cir. 2015) ("In addition, class members like the objectors should be able to expect class counsel and class representatives to disclose such prior professional, financial, personal, or other relationships between class counsel and a class representative that could reasonably be thought relevant to the ability of the representative to act on behalf of the class, if need be by disagreeing with class counsel."). Plaintiff should make a record showing whether and how potential conflicts could be alleviated by disclosure.

Therefore, the Court finds that Plaintiff has not made an adequate showing under Fed. R. Civ. P. 23(a)(4) at this time.

**II.     Plaintiff has satisfied the requirements under Fed. R. Civ. P. 23(b)(3).**

Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(3)[1]. Certification under that subsection is proper if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added).

### A.   Predominance.

Rule 23(b)(3) requires a "rigorous analysis" into whether common questions predominate over individual ones. *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).   The predominance inquiry is "far more demanding than Rule 23(a)'s commonality requirement."  *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).  "Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016).  "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive. Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (internal citations and quotation marks omitted).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc.*

---

[1] Although Plaintiff requested certification under (b)(2) and (b)(3), Plaintiff only analyzed certification under (b)(3). Plaintiff bears the burden of showing that certification is appropriate. Plaintiff did not explain why certification under (b)(2) is appropriate.  Therefore, the Court will only consider Plaintiff's proposed certification under (b)(3).

*v. Halliburton Co.,* ⸺ U.S. ⸺, 131 S.Ct. 2179, 2184, 180 L.Ed.2d 24 (2011) (quoting Rule 23). The Court considers "(1) which of those elements are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). "Stated another way, consideration of how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual—will frequently entail some discussion of the claim itself." *Id.*

An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016).

### B.    Common questions predominate over individual ones.

The Court finds that certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions common to the class predominate over those that are individualized.

Plaintiff asserts that common written representations sent to all class members form the basis for the claims. At issue is whether these common written statements were misleading to insureds. The class's claims will likely succeed or fail based on these common written statements. Under these circumstances, courts may find that common issues predominate over individual ones. *Naylor Farms, Inc.,* 923 F.3d at 795 (10th Cir. 2019) ("cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by class action because the document or conduct is the focal point of the analysis."); *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) ("These plaintiffs base their lawsuit only on what

Midland did not disclose to them in its forms. The jury will not have to determine whether each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry."); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) (reliance element subject to resolution on classwide basis where circumstantial evidence through classwide proof); *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807, 816 (11th Cir. 2018) (predominance satisfied where "[t]he material terms at issue are the same—the renters were promised something they did not receive, which is apparent from the uniform part of the contract."); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997) ("legal determination as to whether the policy in question covers claimants in this factual situation is the predominant question of interest among the class members. Although questions unique to each individual member may remain after the predominant common question has been resolved, the case may be maintained as a class.").

The Court has reviewed the relevant claims and elements, and the record does not reflect that individualized inquiries would predominate over common questions.

### C.      Defendant's argument that common issues do not predominate is unavailing.

Defendant argues that common issues do not predominate for the following reasons:

(1) certain elements of the claims have a subjective inquiry which necessarily requires an individualized inquiry;

(2) individualized oral representations are at issue and Plaintiff obtained her insurance through independent agents;

(3) the underinsured motorist policy may have value to a particular insured under individualized circumstances, which would require an individualized inquiry;

(4) damages are individualized;

(5) the statute of limitations inquiry is individualized; and

(6) any common issues have already been resolved.

The Court concludes that Defendant's arguments are unavailing.  For the reasons explained below, Defendant has generally not shown there are individualized issues, and to the extent there are individualized issues, common questions still predominate.

 (1) <u>The record does not reflect that any elements would require individualized</u>
   <u>inquiries</u>.

Defendant argues that some elements of the claims at issue involve subjective and therefore individualized inquires.  However, Defendant generally has not identified which elements of the claims are subjective.

Defendant argues that individual issues predominate, because the Court's "construction of [the] policy will be guided by the reasonable expectations of the insured."  *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, 11, 285 P.3d 644, 648.  Defendant asserts that "reasonable expectations" will require individual analysis for each class member. *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 353 (D. Ariz. 2009) (court would have to examine reasonable expectations of each insured and circumstances surrounding each contract, individual issues would outweigh common ones).

The Court disagrees with Defendant's argument. Defendant appears to believe that a reasonable expectation inquiry is an inquiry into the subjective expectations of each individual class member.  However, a reasonable person standard in the insurance context in New Mexico and the Tenth Circuit is generally an objective inquiry. *Battishill v. Farmers All. Ins. Co.*, 2006-NMSC-004, ¶ 13, 139 N.M. 24, 27, 127 P.3d 1111, 1114 ("Our interpretation of language within

16

an insurance policy, however, is not based on a subjective view of coverage, but rather "our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured who, we assume, will have limited knowledge of insurance law. When the terms used have a common and ordinary meaning, that meaning controls in determining the intent of the parties.") (internal citations and quotation marks omitted); *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 680–81 (10th Cir. 2019) ("In interpreting policy language, we use an objective standard, considering the "common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean."); *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, ¶ 7, 132 N.M. 264, 266, 46 P.3d 1264, 1266 ("In construing standardized policy language, our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law."), *citing Rodriguez v. Windsor Ins. Co.,* 118 N.M. 127, 130–31, 879 P.2d 759, 762–63 (1994). Defendant has not identified which element of the claims at issue would require a subjective inquiry. Defendant cites to *Stratton, supra*, but that case interprets an Arizona statute which requires actual reliance.

The Court notes that the New Mexico UPA and UIPA claims have a causation element and do not require actual reliance. *Smoot v. Physicians Life Ins. Co.,* 2004-NMCA-027, ¶¶ 20-21, 135 N.M. 265, 270, 87 P.3d 545, 550. Moreover, "Section 57–12–2(D)(14) of the UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only tends to deceive." *Id.*; *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) (as to Hawaii statute similar to New Mexico UPA and UIPA, Ninth Circuit held that "[t]hese plaintiffs base their lawsuit only on what Midland did not disclose to them in its

17

forms. The jury will not have to determine whether each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry.").

To the extent reliance is relevant to a claim at issue, "circumstantial evidence of reliance can be found through generalized, classwide proof, then common questions will predominate and class treatment is valuable in order to take advantage of the efficiencies essential to class actions." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089–90 (10th Cir. 2014). Plaintiff argues that Defendant is liable because of common written misrepresentations given to all class members. *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807, 815 (11th Cir. 2018) (predominance satisfied where "[t]he material terms [of the contract] at issue are the same—the renters were promised something they did not receive, which is apparent from the uniform part of the contract."). Plaintiff can likely attempt to make a prima facie case based on common written statements. The claims of the class are likely to succeed or fail together.

    (2)    <u>Individual oral representations are not relevant to the claims in this case.</u>

Defendant argues that the Court would have to inquire into the oral representations by its agents for each individual claimant. It is unclear why oral representations by agents would be relevant, when the issue is whether Defendant is liable for alleged written misrepresentations in the policies. Defendant has not cited to any law stating that it would not be liable for selling misleading insurance based on non-misleading oral representations. Defendant has not shown how these oral representations are relevant, given that the issue are the written representations in the insurance policies. *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) (oral representations of various brokers irrelevant when issue posed by was whether written

documents common to class were misleading).  Plaintiff has not alleged that defendant or its agents orally misrepresented the terms of the insurance.

Defendant also asserts that Plaintiff obtained her insurance through an individual agent, and facts surrounding how she obtained the insurance would create individual issues which would predominate.  The Court disagrees.  These facts appear irrelevant to Plaintiff's *prima facie* case.

> (3)  Whether the coverage has value in limited circumstances is unlikely to devolve into individualized inquiries.

Defendant argues that whether its underinsured motorist coverage is misleading to an insured is an individualized inquiry for each insured.  Defendant argues there are scenarios where the underinsured motorist coverage may have value for an individual policyholder, such as where:

- multiple passengers are injured;
- an insured has multiple policies and vehicles which may be subject to stacking;
- the insured drives her vehicle in states with lower financial responsibility limits than New Mexico; and
- the tortfeasor's liability policy excluded payment for punitive damages.

**Doc. 156 at 7.**  Defendant theorizes that the Court must inquire into the circumstances of each individual insured to determine if the coverage in fact has value for them.  Defendant asserts that if the underinsured motorist coverage has value under limited circumstances for an individual insured, then it was not misleading to that insured.

Defendant does not cite to any law for this proposition.  Although *Crutcher* expressly declined to rule on this issue, it also appeared to hold that coverage was misleading to insureds even if it retains some value for policyholders.  *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 27, 501 P.3d 433, 440 ("Thus, while we are persuaded by Mr. Crutcher's argument that the

minimum limits UM/UIM coverage is illusory because it is misleading to the average insurance purchaser, we nevertheless conclude that the policy still retains some value for policyholders.").

Judge Browning previously held in this case that "regardless whether minimum limits UIM coverage provides value, Financial Indemnity remains liable for material misrepresentations that compelled insureds to purchase its UIM coverage under the mistaken belief that such coverage entitles insureds to not only tortfeasors' liability limits but also to the full amount of UIM coverage reflected on insureds' declarations pages." *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1151–52 (D.N.M. 2019).

Moreover, Plaintiff's theory of the case is that the written representations are misleading because insureds would not have access to the full amount of underinsured motorist coverage reflected in the policy. The fact that underinsured motorist coverage may have value under limited circumstances does not mean that Defendant did not misrepresent the nature of that coverage.  To the extent value is relevant, the Court believes that evidence of value will likely apply class wide and would not devolve into individualized questions.

(4)     Individualized statute of limitations issues do not predominate.

Defendant summarily argues that statute of limitations issues would require individualized inquiries.  However, Defendant does not conduct an analysis of the statute of limitations issues in this case.  *See* **Doc. 156 at 21.**

> Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any per se rule that treats the presence of such issues as an automatic disqualifier. In other words, the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones. As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3). Predominance under Rule 23(b)(3) cannot be reduced to a mechanical, single-issue test.

*Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 169 (D.N.M. 2016) (Browning, J.), *quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir.2000); *Newberg* § 4:57 (confirming that the above passage "reflects the law in most circuits" (footnote omitted)).

Here, Plaintiff asserts that individualized issues regarding the statute of limitations do not predominate. She asserts that any issues can be easily resolved by reference to Defendant's records. Plaintiff asserts that the class seeking recovery of premiums are entitled to premiums from the date they signed the contract. For the class asserting that they lost underinsured motorist benefits, Plaintiff asserts that the statute of limitations begins to run after Defendant's denial of the applicable coverage. *Brooks v. State Farm Ins. Co.,* 2007-NMCA-033, 10, 154 P.3d 697, 700 ("an insured's UM/UIM cause of action against an insurer accrues on the date of the underlying accident, holding that the claim is based on an alleged breach of the insurance contract and therefore accrues after the insurer refuses to pay the claim."). It appears that the statute of limitations for those who submitted a claim for UM/UIM damages can easily be determined.

As to the class members who never made a claim, Plaintiff asserts that the statute of limitations has not accrued pursuant to *Whelan v. State Farm Mut. Auto Ins. Co.,*2014-NMSC-021, 329 P.3d 646. Whether *Whelan's* reasoning applies here will likely resolve class-wide issues. Based on the briefing and record before the Court, the Court cannot conclude at this time that individualized statute of limitations issues would predominate.

      (5)    <u>Individualized damages issues do not predominate</u>.

Defendant argues that individualized damages issues predominate. Defendant previously represented to this Court that the adjustment of claims and calculation of damages would not preclude class certification. On March 14, 2019, Judge Browning asked "are you going to be arguing that one of the reasons that the Court shouldn't certify the case is because the damages are

going to require individual calculations, and that this not an appropriate case for class certification because of that reason?" **Doc. 159-1 at 37:20-25, 38:1-2**. Defendant replied "no." *Id.* **at 38:3-7, 40:18-25, 41:1-3**. The Court will hold Defendant to its representation to the Court and therefore declines to consider Defendant's argument that damages would require individualized inquiry.

To the extent the Court were required to address this issue, the Court does not believe that individual damages issues would predominate. To be sure, individual damage issues can preclude certification under Fed. R. Civ. P. 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S. Ct. 1426, 1432–33, 185 L. Ed. 2d 515 (2013). However, "[t]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 927 (10th Cir. 2018). Instead, "material differences in damages determinations" will only destroy predominance if those "individualized issues will overwhelm ... questions common to the class." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013); *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019) (same).

The record before the Court currently does not reflect that individualized issues of damages would overwhelm questions common to the class.

       (6)    <u>Common issues have not already been resolved.</u>

Defendant argues that the New Mexico Supreme Court already addressed the common questions in this case in its opinion in *Crutcher*. The *Crutcher* decision did not address whether the underinsured motorist coverage issued by Defendant in this case was misleading. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001 n.1, 501 P.3d 433, 436 ("The dissent inserts hypothetical facts not present in the certified question in its effort to challenge the majority's reasoning, stating "where an insured with minimum UM/UIM coverage has multiple vehicles, or where an insured

has multiple minimum UM/UIM policies available, the insured may be entitled to stack coverages and recover UIM benefits. Unlike the dissent, the majority contains its opinion to the question presented.") (citations omitted). Moreover, the New Mexico Supreme Court did not decide whether Defendant was liable to the putative class under the UPA, UIPA, or contract law. Rather, Defendant appears to dispute the merits and has not admitted liability. Therefore, the Court finds that common issues have not been resolved in this case.

### D.    A class action is superior to other available methods of adjudication.

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem,* 521 U.S. at 615 (quoting Fed.R.Civ.P. 23(b)(3)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617.

The Court may consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The Court finds that a class action under Rule 23(b)(3) is superior to other available methods of adjudication. Plaintiff represents that there may be thousands of class members with small claims who would otherwise not seek recovery. Therefore, the class members have little interest individually controlling the prosecution. Fed. R. Civ. P. 23(b)(3)(A). There is no evidence of other pending litigation by class members asserting the same claims. Fed. R. Civ. P. 23(b)(3)(B). Finally, the difficulties in managing this class action do not appear to be great. Fed. R. Civ. P. 23(b)(3)(D).

## CONCLUSION

Plaintiff has satisfied most of the requirements under Fed. R. Civ. P. 23(a) and (b)(3) for class certification.  However, Plaintiff has failed to show that representation is adequate under Fed. R. Civ. P. 23(a)(4).  Moreover, the Court may not certify this class action until an appropriate motion appointing class counsel is filed and granted.  *See* Fed. R. Civ. P. 23(g) ("Unless a statute provides otherwise, a court that certifies a class *must* appoint class counsel.") (emphasis added); Fed. R. Civ. P. 23(b)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).").

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Class Certification (**Doc. 152**) is hereby **DENIED.**

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**