IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HELEN BHASKER,
on behalf of herself and all others similarly situated,

      Plaintiff,

vs.

FINANCIAL INDEMNITY COMPANY,

      Defendant.

No. 17-cv-00260-KWR-JHR

**PLAINTIFF'S UNOPPOSED MOTION FOR ORDER (1) PRELIMINARILY APPROVING CLASS SETTLEMENT, (2) CERTIFYING CLASS FOR SETTLEMENT PURPOSES ONLY (3) APPROVING NOTICE TO CLASS MEMBERS, (4) ESTABLISHING OPT OUT AND OBJECTION PROCEDURES, (5) APPOINTING A CLASS ADMINISTRATOR, AND (6) SETTING A FINAL HEARING DATE TO CONSIDER FINAL APPROVAL OF THE CLASS <u>SETTLEMENT, ATTORNEYS' FEES AND EXPENSES</u>**

The parties have reached a settlement in this lawsuit. The proposed Class Action Settlement Agreement provides substantial benefits for the class, including an unlimited fund for re-adjustment and adjustment of UIM claims or return of premiums. Class Plaintiff, through counsel, move the Court for an Order approving the settlement agreement on a preliminary basis, certifying a class for settlement purposes only, and entry of an order directing the issuance of notice and schedule a fairness hearing. The proposed Class Action Settlement Agreement is attached as Exhibit 1, and the proposed Notice of Class Action Settlement is attached as Exhibit B to the Settlement Agreement. Defendant does not oppose this Motion. The parties agree that the proposed Class Action Settlement Agreement is fair, reasonable, adequate, and worthy of preliminary approval.

**I.     Standard for Preliminary Approval of Class Action Settlements**

Review and approval of a proposed class action settlement involves two stages: preliminary approval and final approval. In the preliminary approval stage, class counsel submits the proposed terms of settlement to the court, which makes a preliminary fairness evaluation. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.632. "At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether it has any reason to not notify class members of the proposed settlement." *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2012 WL 394392, at *22 (D.N.M. Jan. 24, 2012) (Browning, J.). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, *Newberg on Class Actions* (4th ed. 2002), §11.41.

Under the 2018 amendments to Rule 23(e), in order to grant preliminary approval, the Court must determine, based on sufficient information provided by the parties as required by Rule 23(e)(1)(A), whether giving notice to the class is justified. Such justification is established by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). The Rule now provides that final approval of the proposed settlement may be granted "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate …; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the Court need not reach a final determination on whether to approve the proposed settlement agreement pursuant to Rule 23(e)(2). That

2

determination must follow notice to the class, a period of time for class members to object to the settlement, and a fairness hearing. Nonetheless, because the criteria for determining whether class notice is justified is whether the Court is *likely* to approve the settlement, the same factors that will be addressed on the final approval motion are properly considered here.

The amended Rule supplements but does not supplant the controlling jurisprudence in this Circuit. As before, the District Court considering a proposed class action settlement must determine whether the proposed settlement appears to be fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). The Tenth Circuit has utilized a four-factor test for assessing whether a proposed settlement is fair, reasonable, and adequate, which includes: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir.1984). As noted above, the Rule now also requires consideration of adequacy of representation and equitable treatment of class members. Generally speaking, the Court should grant preliminary approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperatures Sales Practices Litig.,* 2011 WL 4431090, at *5 (S.D.N.Y. May 19, 2009) (internal quotation marks and citation omitted).

Once the Court is satisfied that the proposed settlement is worthy of preliminary approval, and determines that the proposed notice to the class is adequate, the Court authorizes notice of the

settlement to the class members and schedules a fairness hearing. Fed. R. Civ. P. 23(e); Manual for Complex Litigation, Fourth, §21.633. The fairness hearing determines whether final approval of the proposed settlement agreement will be granted, based on the factors set forth in Rule 23(e)(2), and considers any objections raised by class members. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.634. At the fairness hearing, the Court also determines the amount of the attorney's fee and cost awards and the class representative service award. Manual for Complex Litigation, Fourth, §21.726.

## II.     Factual and Procedural Background

This litigation was initiated in state court on December 31, 2016, the case was removed to this Court, and on March 23, 2017 Plaintiff filed her First Amended Complaint, *Bhasker v. Financial Ins. Co.,* Case No. 17-cv-00260 (the "Action"). **Doc. 12**.

Plaintiff alleges Defendant misled New Mexico consumers into purchasing uninsured/underinsured motorists bodily injury ("UIM") coverage by failing to explain the effect of an offset against UIM coverage of the tortfeasor's liability coverage pursuant to *Schmick v. State Farm Mutual Automobile Insurance Company*, 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092; and

On April 28, 2017, Financial moved to dismiss Plaintiff's First Amended Complaint and the Court denied Financial's motion. **Doc. 15**. On January 10, 2018, the Court issued a Memorandum Opinion and an Order denying Financial's Motion to Dismiss. Doc. 48. On January 19, 2018 Financial answered Plaintiff's First Amended Complaint. **Doc. 49**. On April 4, 2018, Financial moved for judgment on the pleadings. **Doc 58**. On February 7, 2019, the Court issued a Memorandum Opinion and an Order denying Financial's Motion for Judgment on the Pleading. **Doc. 107**.

The Parties engaged in significant discovery into the claims and defenses, including thorough review and analysis of claims files, training materials, and policies and procedures and the conduction of corporate depositions.

On October 13, 2021, Financial moved for summary judgment and the Court denied Financial's motion. **Docs. 142 and 162**. On November 17, 2021, Plaintiff moved for class certification and the Court denied Plaintiff's motion, but held that Plaintiff had demonstrated that Plaintiff's claims met the numerosity, commonality, typicality, and predominance and superiority elements of Rule 23(a) and (b)(3). **Docs 152 and 164**. On April 15, 2022, Plaintiff moved to appoint class counsel and amend/correct the Court's order denying class certification. **Doc. 165**. On April 29, 2022, Financial filed a response to Plaintiff's motion to appoint class counsel and amend/correct the Court's order denying class certification. **Doc. 166**.

On August 10, 2022, the Court entered an Order adopting the Parties' Joint Status Report, providing that the Parties shall file their next Joint Status Report on or before October 11, 2022 which advises the Court of the outcome of the Parties' mediation and addressed the need for the filing of a reply to Plaintiff's Motion to Alter or Amend the Court's Certification Order Pursuant to Rule 23(c)(1)(C) and appoint Class Counsel Pursuant to Rule 23(g) in the event the mediation was not successful. **Doc. 171**.

Starting on September 27, 2022, with a full-day mediation session overseen by experienced neutral Rodney Max, the Parties engaged in arms' length negotiations; and on September 29, 2022 the Parties informed the Court that they had reached an agreement in principle to settle this litigation. **Doc. 172**;

Plaintiffs, through their counsel, believe that the Settlement confers substantial benefits on the Settlement Class and is in the best interest of the Settlement Class. It is also understood that

5

Plaintiffs, through their counsel, believe that their claims have substantial merit. Nonetheless, Plaintiffs, through their counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Defendant through motions practice, trial, and potential appeals. They have also considered the uncertain outcome and risks of further litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs' counsel is experienced in insurance litigation and knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and specifically in this Action. Plaintiffs' Counsel has determined that the Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

Defendant continues to deny each and all of the claims and contentions alleged against it in the Action. Defendant denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Action. However, Defendant has concluded that further litigation would be protracted and expensive. Defendant has considered the uncertainty and risks inherent in any litigation, and Defendant has therefore determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

**III.    The Proposed Settlement Class Should be Certified**

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. Here, Plaintiff contends that the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court, with Plaintiff's counsel appointed as Class Counsel and Plaintiff appointed as Class Representative. Defendant agrees that a class should be certified for the purposes of settlement only and does not object to class certification here. However, Defendant contends this case would

6

not be appropriate for certification of a litigation class, and reserves the right to challenge certification of a class if the settlement is not approved. Defendant's agreement that the class should be certified for settlement purposes is not an admission that Defendant agrees the class should be certified for any other purpose or with any of the contentions raised by Plaintiff here on the merits and/or to support class certification.

  A. *The Class Meets the Requirements of Rule 23(a)*

  **Numerosity.** The Settlement Class consists of more than 1,000 individuals, making joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1).

  **Commonality.** Plaintiffs allege that Class Members and Plaintiffs' claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For example, Plaintiff contends that Defendant's written materials describing UIM benefits was uniform for all Class Members. The written content forms the basis for Plaintiff's and Class Members' misrepresentation claims. When a common representation is made in a contract, whether this representation is lawful under the relevant consumer protection laws is a common question. *See, e.g., Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) (certifying class action alleging breach of homeowner's insurance contract); *See Venerus v. Avis Budget Car Rental*, LLC, 723 F. App'x 807, 815 (11th Cir. 2018) (common questions predominate in class action based on Florida consumer protection law arising out of failure to provide promised insurance coverage); *Daye*, 313 F.R.D. at 176 (certifying consumer protection class action against lender).

  **Typicality.** To satisfy the typicality requirement, a party seeking class certification must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[D]iffering fact situations of class members do

not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quotations omitted); *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 914 (10th Cir. 2018).

Class Plaintiff alleges that she seeks lost benefits and premiums damages for herself and on behalf of Class Members as a result of Defendant's violations of its common law, statutory, and contractual duties. Plaintiff contends that the class was subject to the same conduct and disclosures. Plaintiff further alleges that the relief she seeks for herself and on behalf of others similarly situated are based on the same evidence and legal theories and any differences between Plaintiff and other purchasers of insurance allegedly harmed by Defendant's conduct, they are minimal. Plaintiff also alleges the claims arise from the same nucleus of facts relating to Defendant's misrepresentations, pertain to common defendants, and are based on the same legal theories. Rule 23(a)(3) is satisfied.

**Adequacy.** Plaintiff is represented by Corbin Hildebrandt, Esq. (Corbin Hildebrandt, P.C.), Geoffrey Romero, Esq. (Law Offices of Geoffrey Romero) and Kedar Bhasker, Esq (Law Office of Kedar Bhasker, LLC.) All attorneys have extensive experience litigating negligence, UPA, UIPA, and breach of contract cases and have brought liberal joinder and class actions, including class actions under the UPA, in both this Court and state courts. Plaintiff's counsel litigated the issues in the seminal *Crutcher* case where the New Mexico Supreme Court provided an answer to a certified question of law from the United States District Court for the District of New Mexico. *Crutcher v. Liberty Mut. Ins*. Co., 501 P.3d 433. Plaintiff further alleges that she is an adequate class representative and there is no reason to find otherwise.

    B.   The Class Meets the Requirements of Rule 23(b)(3)

**Predominance.** The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amgen Inc.*, 568 U.S. at 459 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (*citing* 2 Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted)).

If the liability issues are common to the class, common questions will generally predominate. Cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by class action because the document or conduct is the focal point of the analysis. *See Naylor Farms, Inc.*, 923 F.3d at 795 (10th Cir. 2019)(class certification is appropriate in case involving oil and gas leases with similar provisions); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2nd Cir. 2013) *cert. denied sub nom. US Foods, Inc. v. Catholic Healthcare West*, 134 S. Ct. 1938, 188 L. Ed. 2d 960 (2014) (Predominance will be found in the absence of material differences in contract language); *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 382 (S.D.N.Y 2019) (The contract language at issue does not vary by individual class member and is not materially different across the eighteen policies…Therefore, adjudication of the question of breach "will focus predominantly on common evidence ...."). Here, Plaintiffs allege there are no individual questions relating to liability and the damages are standardized across the class. Most importantly, Plaintiff alleges the Class's claims are susceptible

to generalized proof because they all rest on contracts that were the same or virtually the same for every class member. Those contracts promised UIM coverage. For that reason, Plaintiff contends the legal issues concerning the violations of New Mexico law predominate over any other possible issues.

**Superiority.** The class action format is a superior method for resolving this dispute. For most members, maintaining an individual suit is not worthwhile. The fundamental purpose of the money damages class action is to vindicate consumer's rights in cases like this.

In addressing whether a proposed class action is superior to other available methods of adjudicating the controversy, courts start with the four factors that rule 23(b)(3)(A)-(D) enumerates:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 165 (D.N.M. 2016).

Plaintiff contends that most Class Members likely do not know they even have claims against Defendant. It is likely that most Class Members have never heard of the "*Schmick* offset," are unfamiliar with the legal workings of UIM insurance, and do not realize how their reduced recovery in a personal injury scenario may have deprived them of their first layer of their offset UIM coverage. Accordingly, most would not bring their own actions. Even if they were aware of their potential claims, the cost of individual litigation would in nearly all cases eclipse their potential recovery.

All the requirements of Rule 23(b)(3) are met for settlement purposes. There are common questions of law and fact that predominate over any questions affecting only individual class members and the class action is superior to any other available methods for adjudicating this controversy.

## IV.  Summary of the Settlement Terms and Proposed Distribution

The proposed Class Action Settlement Agreement and the plan of distribution therein provides substantial benefits to class members, and is worthy of preliminary approval.

### A.  Cash Payments to Class Members

**i. Automatic Payments to Eligible Settlement Class Members**. Defendant will readjust wrongful death claims for Settlement Class Members who suffered a fatality, had an offset coded in Defendant's electronic records, and whose UIM coverage benefits under an insurance policy were reduced, denied, or not paid by Defendant due to a *Schmick* Offset between January 1, 2010 through the date of the Preliminary Approval Order (the "Automatic Payments"). Defendant will determine these eligible Settlement Class Members by reviewing Defendant's data and provide a list of eligible Settlement Class Members to the Settlement Administrator for a separate notice, including any requests for information required by law for a person to receive such benefits, including tax forms. Any separate notice to this eligible Settlement Class Member population will be drafted by and approved by both Parties and the Settlement Administrator. Settlement Class Members eligible for these Automatic Payments shall not be required to submit a claim to receive these benefits.

    **ii.**     **Other Payment Options**. Settlement Class Members who are not eligible for Automatic Payments may submit a claim for one of the following two options:

        a. <u>Option 1</u>: Defendant will readjust the claims for Settlement Class Members who make a Valid Claim for Option 1 whose UIM coverage benefits under an insurance policy were reduced or denied by Defendant pursuant to a *Schmick* Offset between January 1, 2010 through the date of the Preliminary Approval Order Readjusted payments will be equal to the amount of any *Schmick* Offset taken, subject to applicable UIM bodily injury limits.

        b. <u>Option 2</u>: Defendant will make a payment to all Defendant's insureds who make a Valid Claim for Option 2 and who purchased UM/UIM coverage on an insurance policy between January 1, 2010 through the date of the Preliminary Approval Order. The payment will equal 25 percent of the total premium paid by the Settlement Class Member for UM/UIM coverage.

    **iii.**     All Settlement Class Members who submit a Valid Claim, as approved through the Notice Program described in Section IV of the Settlement Agreement, shall be eligible to receive Settlement Class Payments under one of the two options described above. If a Settlement Class Member erroneously submits a claim for both Options 1 and 2, they will be prompted by the Administrator to correct this error by choosing only one of these options.

    **B.**     **Right to Object and/or Opt-Out**

Plaintiff's proposed Notice of Class Action Settlement explains class members' right to object and/or opt-out to the proposed Class Action Settlement Agreement. Plaintiff requests that class members who wish to object and/or opt-out be ordered to do so in writing, postmarked no

later than thirty (30) days before the final approval hearing set by this Court to finally approve the Settlement.

### C. Award of Attorneys' Fees

Plaintiff requests that the Court grant preliminary approval to an award of attorneys' fees in the amount of $710,000. This amount is inclusive of gross receipts tax and is based off of the data voluntarily provided by Defendant at mediation. Because Class Members have an option of having 25% premiums returned or having their UIM claim re-adjusted or adjusted for the first time dating back to January 1, 2010, the benefits conferred onto the class may exceed $2,300,000. Thus, the attorneys' fees requested represents 29% of the potential Settlement Class benefits. For example, based on the data, Defendant collected $4,285,261 in UM/UIM premiums since January 1, 2010. A 25% return of premiums confers a class settlement benefit in the amount of $1,071,315.25. Additionally, in the event that 50 Settlement Class Members who were involved in a car crash between January 1, 2010 and the date of the Preliminary Approval Order submit valid claims at minimal limits for adjustment and receive the full amount of minimal limits UIM coverage ($25,000.00) would equal $1,250,000.00. This amount increases in the event a Settlement Class Member had above-minimal limits and submits a valid claim pursuant to Option 1.

### D. Service Award to Plaintiffs

Plaintiff requests that the Court grant preliminary approval to a service award of Twenty-Five Thousand Dollars ($25,000), for the named Plaintiff, Helen Bhasker. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017). "The practice of granting incentive awards to Class

Representatives is common and widespread in class litigation." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (approving awards ranging from $1,000 to $15,000 for class representatives). "[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (internal quotation marks and citation omitted) (awarding $10,000 to each of five named plaintiffs); *see also*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving an incentive award of $20,000 out of a $1,000,000 settlement fund). Incentive awards are justified "when a class representative is not forthcoming," and may be justified "when the class representative undertakes risk, provides additional effort, or contributes expertise to prosecuting a class action." *Lane*, 862 F.Supp.2d at 1236 (Browning, J.) (citing *UFCW Local 880–Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 Fed.Appx. 232 (10th Cir.2009)).

V.   **Preliminary Approval of the Settlement Agreement is Appropriate**

   **A. The proposed Class Action Settlement Agreement is Fair, Reasonable, and Adequate**

For all of the reasons set forth herein, the proposed Class Action Settlement Agreement is fair, reasonable, and adequate, is highly likely to meet the requirements of Rule 23(e)(2), and is worthy of notice to the class.

Under Fed. R. Civ. P. 23(e)(2), a class action settlement must be "fair, reasonable and adequate." The Tenth Circuit has instructed district courts to analyze the following factors to determine whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, such that the ultimate

14

outcome of the litigation is in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). An evaluation of the above-referenced factors fully supports preliminary approval of the proposed Class Settlement. First, the settlement was fairly and honestly negotiated.

Prior to reaching a settlement, the parties engaged in extension motion practice and discovery. The parties also engaged in extensive good-faith negotiations at arm's length before reaching agreement on the terms of the proposed settlement for the Class, negotiations that continued for many months after the parties verbally agreed to settlement in the second mediation. Second, serious questions of law and fact exist which place the ultimate outcome of this litigation in doubt, including whether, and to what extent, Defendant is liable for the misrepresentation of UM/UIM coverages. Defendant denies that it misrepresented UM/UIM coverages or has acted improperly, and would vigorously defend its rights if the case were litigated further. Third, the value of an immediate recovery to the Class clearly outweighs the mere possibility of future relief after additional protracted and expensive litigation. As per the parties' calculations, the amount which Defendant has agreed to pay the Class Members to settle their claims may exceed $2,300,000.00. This avoids the risk to the Class Members of a recovery of a substantially smaller amount at an uncertain date in the future. Finally, it is the judgment of the parties and their counsel that the proposed Settlement Agreement reached through mediation by a respected and experienced class action mediator is fair and reasonable.

**B.   The Proposed Notice of Class Action Settlement Should Be Approved**

Under Fed. R. Civ. P. 23(e)(1)(B), class members are entitled to notice of the proposed

Class Action Settlement, and an opportunity to object before it is finally approved by the Court. The Notice of Class Action Settlement proposed by Plaintiff is clear and straightforward, providing class members with information to evaluate whether to object to the Class Action Settlement Agreement, as well as directions on how to seek further information. *See* Exhibit 2.

Plaintiff plans to use an experienced administrator, Epiq Systems, Inc., to manage the proposed notice. The proposed Notice of Class Action Settlement will be sent by mail and email to addresses obtained from Defendant's records. If Defendant does not have a valid email address, notice shall be sent by first class mail to those Settlement Class Members' last known address. The last known address shall be determined from information reasonably available in Defendant's files, which will be run through the United States Postal Service's national change of address database prior to mailing by the Settlement Administrator.

A copy of the Claim Form, substantially in the form attached hereto as Exhibit C, will be available on the Settlement Website identified in the Class Notice and can be requested to be received in the mail from the Settlement Administrator.

### III.   Conclusion and Relief Requested

Plaintiff respectfully requests that the Court preliminarily approve the Class Action Settlement Agreement, enter an order directing the issuance of the proposed Notice of Class Action Settlement, and schedule a fairness hearing.

Date: January 31, 2023

Respectfully Submitted,

By: /s/ *Kedar Bhasker*

Kedar Bhasker
Law Office of Kedar Bhasker, LLC
2741 Indian School Rd. NE
Albuquerque, NM 87106

(505) 407-2088
kedar@bhaskerlaw.com

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
2741 Indian School Road NE Albuquerque, NM 87106
(505) 998-6626
corbin@hildebrandtlawnm.com

and

Geoffrey Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@geoffromerolaw.com

*Attorneys for Plaintiffs*

**Approved as to form and content by counsel for Financial aka Kemper/Unitrin:**

Date: January 30, 2023

By:/s/ *Mark Hanover*
Mark L. Hanover (*pro hac vice*)
DENTONS US LLP
233 South Wacker Dr., Suite 5900
Chicago, IL 60606
(312) 876-3145
Mark.hanover@dentons.com

Alicia M. Santos
O'BRIEN & PADILLA, P.C.
6000 Indian School Rd. NE, Suite 200
Albuquerque, NM 87110
(505) 883-8181
asantos@obrienlawoffice.com

*Attorneys for Financial aka Kemper/Unitrin*